BENJAMIN A. STRANGE v. H. & T. C. R. R. COMPANY.

*(Case No. 688.)*

1. PURCHASER OF STOCK — NOTICE.— A certificate of stock in an incorporated company, contained a recital on its face that it was transferable by assignment, and on its surrender to the directors a new certificate of proprietorship would be issued to the assignee. The by-laws authorized transfers of stock, in writing, by the owner thereof, indorsed on the certificate, or on separate paper ; and on the delivery thereof to the secretary, together with the original certificate of stock, for registration, new stock would be issued to the assignee. The assignee of the original stockholder, having possession of the original certificate, sued the company for the value of new stock issued to a subsequent assignee of the original holder to whom new stock had issued, without presentation of the original certificate. The plaintiff had not presented his transfer and stock at the secretary's office before the new stock issued.    *Held:*

   1. The company was estopped from denying that it would hold for the benefit of the holder of the certificate the amount of stock therein specified, until it was presented for cancellation and new stock issued.

   2. The non-production of the original certificate of stock was notice to the company that a superior title might be in a third party.

   3. Though the certificate was not the share of stock, it was constituted by the company the visible representative of it, and as between the shareholder and his assignee, the equitable if not the legal title would pass by a transfer of the certificate, and this, without it being recorded on the books of the company.

   4. The certificate and transfer were *prima facie* sufficient to authorize the holder to demand of the company the privileges and benefits to which the original holder was entitled.

5. In the absence of a charter or statutory provision requiring a transfer of stock on the books of the company, as between the shareholder and his assignee, to pass title as against a creditor, the interest of the creditor must be regarded as subordinate to that of the *bona fide* assignee.

6. The company was liable to the assignee of the original stockholder holding the original certificate.

2. The owner of a certificate of stock in an incorporated company, placed his certificate, with a blank transfer indorsed thereon, in the hands of another for the purpose of sale; the agent filled the blank with his own name and afterwards indorsed thereon a transfer from himself to a purchaser. *Held* —

1. The original owner having given to his agent possession of the certificate with the external *indicia* of ownership and the right of disposal, the subsequent transfer by the agent clothed the purchaser with the apparent legal title.

2. The rights of the purchaser did not depend on the actual title or authority of the agent to sell, but upon the act of the original owner giving the apparent authority of disposal, and which would estop him and his assignee.

3. The title of the purchaser would be subject to be defeated by a superior title in the original owner, if acquired with notice of it, or without valuable consideration.

4. In the absence of statutory or charter provision, the books of the company could not operate as notice of the ownership of the stock, further than for the use and benefit of the company itself.

ERROR from Harris. Tried below before the Hon. James Masterson.

The facts necessary to a proper understanding of the opinion will be found contained in it.

*Stewart & Barziza*, for plaintiff in error.—We contend that the written stipulations and conditions, as set forth in the original certificate of stock, ought to be strictly complied with by the officers of defendant. They are presumed to know more about the charter of their company and the rules set up in their certificates of stock than any other person; and if anybody ought to suffer, it ought to be themselves.

These remarks, let it be remembered, are not made solely because it appears that two officers of this company have been

dealing in this stock to the prejudice of plaintiff, but are meant to urge the principle, that as the new certificate of stock to Mr. Richardson which was issued, and as the new certificate to Mr. Hutchins which was issued, their acts were done by the officers of the defendant, who are presumed to know the charter of the company, and the stipulations in the company's certificate. Therefore we say, that it is not a question so much of an innocent purchaser (upon which we could confidently claim) as of principle and right and plain and common justice and law.

It is like a negotiable instrument which is not due; it may be assigned; the holder thereof is presumed to be the owner for value if it is indorsed to him; the holder for value of that paper without any assignment, stands in a better condition than does the one who claims to be an assignee upon another piece of paper and not possessing the original.

We contend that the holder and owner for value of that original certificate of stock, could and can, at any time, demand the same or its value, and cannot be affected with notice of any transfers or transaction had and made upon the books of said company, or by its officers. And we contend that the issuing of another certificate to Richardson, while the original was out, was utterly void as to the owners of the original; and that the issuance of the certificate to Hutchins was utterly void as to the owners of the original, and that the owners and holders of such original can, at any time, claim their rights.

*F. Barnard* also for plaintiff in error:

I. The transfer by assignment in writing, and delivery of the certificate for said stock by Browder to Fletcher, and by Fletcher to Coryell, and by Coryell to Strange, divested Browder of all title and right to said stock. Pasch. Dig., 222; Durat *v.* Swift, 11 Tex., 140–279; Angell & Ames on Corp., 564, and cases cited.

II. The issuance by defendant of a second certificate for the stock, in lieu of the certificate issued to Browder, without the

return and delivery of the Browder certificate, did not affect or impair the right and title of the assignee and holder of the Browder certificate under transfer in good faith, without notice of adverse claims by Browder, or his second transfer.

III. The terms of the certificate and the by-laws of the defendant company bound it to recognize plaintiff as the owner of the stock, and the defendant was estopped from issuing a new certificate to Hutchins, and plaintiff ought to have had judgment for the stock or the agreed value thereof.

IV. Where a party delivers a certificate of stock, with the assignment thereof in blank, to an agent, to be sold or disposed of, a purchaser of such stock, with or without notice of the agency, takes a good title, and is not bound for the proper application of the purchase money.    Kottright *v.* Buffalo Com. Bank, 14 Md., 299.

*Baker & Botts* for defendant in error. — As counter propositions to the propositions made by plaintiff in error, we make the following:

I. Certificates of stock are simply the muniments and evidence of the holder's title to a given share in the property and franchises of the corporation of which he is a member as between him and the corporation.

II. The certificate is merely the evidence of his interest, as the title deeds are of title to the land, but not of the possession.    Griffin *v.* Howell, 5 Barr, 77.

III. When Browder sold to Merriman, Fletcher held the certificate with power to sell; but the transfer of Browder to Merriman was a revocation of the power of sale previously given to Fletcher, and its filing in the office of the company was notice to the world.    The community interested have the same notice of transfers registered as they have of deeds of lands recorded.    After the date of Browder's sale, the sale of Fletcher was unauthorized, and an unauthorized sale, although for a valuable consideration, and without notice, vests no higher title in the vendee than was possessed by the vendor.    Browder trans-

ferred to Fletcher as his agent to sell in 1867; Browder sold to Merriman in 1868; the transfer to Merriman filed in the office of company in 1871, and Fletcher's sale to Coryell in 1873. Dodd & Co. v. Arnold, 28 Tex., 97; Saltus v. Everett, 20 Wend., 275; Prescott v. Deforrest, 16 Johns., 159; Wheelwright v. Depeyster, 1 Johns., 471; Williams v. Merle, 11 W. R., 80; Brower v. Peabody, 13 N. Y., 121.

IV. Certificates of stock are not negotiable instruments, so as to come within the rules of bills of exchange and promissory notes. No rules which belong to negotiable securities belong to them. Railroad Co. v. Howard, 7 Wall. (U. S.), 415; Wilson v. Little, 2 N. Y., 447; Mechanics' Bank v. N. Y. & N. H. R. Co., 13 N. Y., 625; Weaver v. Borden, 49 N. Y., 288; Dustin v. Livingston, 9 J. R., 96; Arnold v. Ruggles, 1 R. I., 165.

*George Goldthwaite* also for defendant in error.

BONNER, ASSOCIATE JUSTICE. — This case is one of first impression in this court, and we have endeavored to give it that full consideration in the light of authority, consistent with the pressure of other business, which its importance demands.

It involves the question of the liability of a railroad company for damages for having issued new shares of stock to one claiming under the first shareholder, when the original certificate is still outstanding in the hands of an innocent third party, but who had not presented the same, with his transfer, to the office of the company, previous to the issuance of the new stock.

To determine the liability of the company, to some extent necessarily involves the merits of the respective titles of the two claimants, though but one is before the court.

The original certificate of stock issued on April 1, 1861, to J. M. Browder, and reads as follows:

"HOUSTON & TEXAS CENTRAL RAILWAY COMPANY,
"No. 19.                                              Four shares.
"This certifies that J. M. Browder, proprietor of share No.

917 in the capital stock of the Houston & Texas Central Railway Company, established by acts of incorporation passed by the legislature of the state of Texas, subject to which, and the by-laws, this certificate is transferable by assignment, and upon surrender hereof to the directors a new certificate of proprietorship of said share will be delivered to the assignee."

Plaintiff Strange holds possession of this original certificate for a valuable consideration, under the following chain of title:

1. A transfer from J. M. Browder, the original grantee, to E. S. Fletcher, dated March 14, 1862. 2. A transfer from E. S. Fletcher to J. R. Coryell, dated May 10, 1873. 3. A transfer from J. R. Coryell to plaintiff B. A. Strange, dated August 29, 1873.

The title under which Hutchins holds the new stock is as follows:

Browder sold and transferred said certificate of stock on May 6, 1868, for valuable consideration, to C. H. Merriman. In pursuance of said assignment from Browder, Merriman transferred the stock on the books of defendant's company to A. S. Richardson, and certificate of the stock was issued to Richardson on July 27, 1868, and afterwards Richardson transferred the stock to W. J. Hutchins, on or about January 14, 1871. The certificate to Richardson was surrendered, and a new certificate for the same stock was delivered to Hutchins, who holds and represents the stock in defendant's company.

The by-law of the company authorized by its charter, upon the subject of the transfer of stock, reads:

"Section 4. The transfers of any share may be made by an instrument in writing signed by the owner, which writing may be indorsed on the certificate or made on a separate paper. The assignee must cause his transfer to be presented and delivered to the secretary of the company before it will entitle him to be recognized as the owner; and upon presentation of such transfer, with the certificate of stock, the secretary shall record the same in books to be kept for that purpose and called "Report of Transfers," and the president and secretary shall

issue new certificate or certificates to the assignee as he may be entitled, unless they have notice of fraud or invalidity of said transfer."

Subsequently to the issuance of the new stock to Hutchins, a demand was made upon the company by the plaintiff, Strange, for the issuance of stock to him, he having presented the original certificate with the transfer to himself, which demand was refused.   On the trial below a jury was waived and judgment rendered by the court for the defendant, the R. R. Co.

From the above statement, it will be seen that the original certificate of stock was transferable by assignment, either indorsed on the certificate itself or on a separate piece of paper, and was not required to be made, as in some cases, on the books of the company.

By the terms of the certificate and by-law, there was a continual affirmation made by the company, that they would hold, for the use and benefit of the rightful owner of the certificate, the amount of stock therein specified, until it was presented at the office of the company for cancellation and new stock issued; 'and the company was estopped from denying this. Holbrook *v.* Zinc Co., 57 N. Y., 616; *In re* B. & San F. R'y Co., E. L. R., 3 Q. B., 584.

The company is to a certain extent the custodian of the rights of the stockholders, and is responsible for an illegal issuance of stock to their prejudice.    Bayard *v.* Bank, 52 Pa. St., 234; Lowery *v.* Bank of Baltimore, Taney's C. C. R., 310; Bank *v.* Lanier, 11 Wall., 369; Salisbury Mills *v.* Townsend, 109 Mass., 121; Pratt *v.* The Taunton Copper Co., 123 Mass., 110; Lorings *v.* Salisbury Mills, 125 Mass., 150; Bridgeport Bank *v.* R. R. Co., 30 Conn., 231; R. R. Co. *v.* Schuyler, 34 N. Y., 30.

It is not intended by this, however, to prescribe an arbitrary rule, that the company shall, in any event, without being in default as by negligence or fraud, be liable for the issuance of stock to any other party than the holder of the certificate, but that it takes the risk, if issued without due precaution, that the certificate may be presented by some one having the superior title.

The non-production of the original certificate of stock was notice to the company that such superior title might be in a third party. R. R. Co. *v.* Schuyler, 34 N. Y., 81; Bayard *v.* Bank, 52 Pa. St., 235.

A provision for the record of the transfers of certificates, to be made upon the books of the company, as required by the act of December 19, 1857 (Pasch. Dig., art. 4909), was intended for the benefit of the company, so that it might know, by ready reference, who were legal shareholders, who were entitled to vote at its meetings, receive dividends, etc., and to whom it could safely issue new stock. Bank *v.* Kortright, 22 Wend., 362; Broadway Bank *v.* McElrath, 2 Beasley (N. J.), 26.

Although the certificate was not the share of stock itself, it was what the company constituted the visible representation of it; and as between the shareholder and his assignee, the equitable, if not the legal title to the stock, would pass by a transfer of the certificate, and this without it being recorded on the books of the company. Angell & Ames on Corp., §§ 353–4; id., § 564; R. R. Co. *v.* Schuyler, 34 N. Y., 30; McNeil *v.* Bank, 46 N. Y., 331; Latch *v.* Wells, 48 N. Y., 592; Bank *v.* Kortright, 22 Wend., 362; Turnpike Co. *v.* Ferree, 2 C. E. Green (17 N. J.), 118; Bank *v.* McElrath, 2 Beasley (13 N. J.), 24.

Such certificate and transfer is *prima facie* sufficient to authorize the holder to demand of the company the privileges and benefits to which the original holder would be entitled.

This construction of the legal effect of a certificate of stock and its transfer, is now required, almost as a matter of necessity, both for the benefit of corporations and of trade, since stocks in incorporated companies have become such an important basis for speculation and collateral security. To hold otherwise would virtually withdraw such stocks from all other than the home market.

Thus it will be seen that the rights of a *bona fide* holder of a certificate of stock are two-fold in their character. As against the shareholder, he would, whether his transfer be re-

corded on the books of the company or not, have a good title; as against the company, to enable him to demand that he be recognized as a shareholder, and entitled to its rights and privileges, he should present his certificate and transfer for record in the office of the company. R. R. Co. v. Schuyler, 34 N. Y., 80.

. There is a class of cases in which it is held that shares of stock cannot be assigned simply by delivery and transfer of the certificate, unless made on the books of the company, so as to defeat the rights of an attachment or execution creditor without notice, by levy at the office of the company.

. These cases generally turn upon some particular provision of the charter or upon some statute providing for such levy.

. In the absence of some such positive provision, which would make a transfer on the books of the company an *essential condition*, as between the shareholder and his assignee, to pass title as against such creditor, it is believed that, by reason of the policy which favors the unrestrained transfer of shares of stock, the interest of the creditor should be subordinate to that of such *bona fide* assignee; and particularly, as otherwise such assignee would virtually be without remedy, if the company could protect itself under the levy and sale. Broadway Bank v. McElrath, 2 Beasley (N. J.), 24.

Browder, the original shareholder, testified that he placed his certificate of stock, with a blank transfer executed by him thereon, in the hands of Fletcher, for the purpose of effecting a sale.

Having thus given to Fletcher possession of the original certificate with the external *indicia* of ownership and the right of disposal, Fletcher's subsequent sale of it, under which plaintiff Strange claims, clothed him with the apparent legal title.

The rights of Strange, if *bona fide*, do not depend upon the actual title or authority of Fletcher to sell, but upon the act of Browder giving the apparent authority, and which would estop him and his assignee. ·Saltus v. Everett, 20 Wend., 278; Mc-

Neil *v.* Nat. Bank, 46 N. Y., 325; Bridgeport Bank *v.* R. R. Co., 30 Conn., 231; Turnpike Co. *v.* Ferree, 2 C. E. Green (N. J.), 117; Holbrook *v.* Zinc Co., 57 N. Y., 617.

The title of Strange, however, was subject to be defeated by a superior title in Browder or his assignee, if it could be shown that Strange purchased either with notice of it, or without paying a valuable consideration therefor.

It is uncontradicted both that Strange was a purchaser for value and without actual notice, and it remains to inquire whether he can be charged with constructive notice.

So far as it appears, either from any public statute or the charter or any authorized by-law of the company, the books of the company are not made to operate as notice of ownership further than for the use and benefit of the company itself.

As held by Chief Justice Taney, in Lowery *v.* Bank of Baltimore, a purchaser of stock is not bound to look beyond the certificate or to examine the books of the corporation, to ascertain the validity of a transfer, as a different rule would greatly impair the value of stock, and would seriously disturb the usages of trade and the established order of business. Taney's C. C. R., 310; Salisbury Mills *v.* Townsend, 109 Mass., 115.

Hence these records are not constructive notice to third parties dealing in certificates of stock, and were not such notice to Strange.

On the contrary, it may be said that the company, by the terms of the certificate to Browder and of their own by-law, were by the non-production of this certificate at the time they issued the new stock to Richardson, and who seems to have been its secretary, charged with notice that the original certificate was outstanding and may have then already passed, or might subsequently pass, into the hands of an innocent holder for value. This, we think, was, under the evidence in this case, such a dereliction of duty on the part of the company, and such breach of its contract, as contained in the certificate which it had permitted to be thrown upon the market, and to which it had invited confidence, as to make the company

responsible to Strange, who held the possession of it, by the older title, for a valuable consideration and without notice of any defect.

We are of opinion that under the law as applied to the evidence, there was error in the judgment for which it should be reversed and the cause remanded.

Reversed and remanded.

Chief Justice Moore dissenting.

[Opinion delivered March 23, 1880.]