# H. SEELIGSON & CO. vs. B. M. HOBBY, J. M. BROWN, INTERVENOR.

### SUPREME COURT, GALVESTON TERM, 1884.

*Transfer of city railway stock—Garnishment.*—The owner of stock in the city rail-way of the city of Galveston can, for a valuable consideration, convey and transfer his stock to another, by simple deed of transfer, if made in good faith, and invest his purchaser with, and divest himself of title, notwithstanding a by-law of the corporation prescribing a mode and maner of conveying such stock. See the opinion on the question.

*Same* —The customary provision in the charter or by-laws of a stock company, that the stock is transferable by a stockholder on the company's books only, must be construed to be intended merely for the protection of the corporation, and no effect is given them in this State, further than is necessary to attain that purpose. The company is entitled to know who are its stockholders; who entitled to vote in its management; to whom dividends are due; and when it owns a lien for debt from a stockholder, to prevent transfer in derogation of its rights. The effect of a transfer of stock is to convey to the purchaser such right in the stock as the vendor had at the time he sold. Such provisions in the charter or by-laws of stock companies cannot be construed to restrain the stockholder from transferring his stock at pleasure by way of equitable assignment of his interest, subject to the charter rights of the corporation. See the opinion *in extenso* on the question.

Appeal from Galveston County.

*C. L. Cleveland* for appellants.

*Mann & Baker* for the appellees.

### 'STATEMENT.

The original suit was instituted August 9, 1877, by the appellants against one H. to recover upon a note for $1734. In addition to an attachment upon certain lots, they obtained a writ of garnishment against the Galveston city railroad company. The garnishee answered that certain certificates of shares of the said company, stood, at the time of service of said garnishment, in the name of the defendant H. upon the books of said company, but that James M. Brown claimed the same by previous transfer from said H., and asked that Brown be made a party. October 5, 1877, Brown intervened by petition, claiming the shares as delivered to him in pledge and as collateral security, before said garnishment, for money loaned to H., which was still owing, to pay which the stock was insufficient.

Plaintiffs replied by denial, and by alleging that said railway had, under its charter, authority to pass by-laws to regulate the mode of transfer of stock, and that when the transfer was made to Brown

there was in force a by-law, of which Brown had notice, providing that stock could only be transferred upon the surrender of the certificate to the president or secretary at the office of the company, either of whom should see that the same was cancelled by writing "cancelled" prominently over the face of the certificate and erasing the name of the president before issuing a new certificate to be filed away.

They further alleged that all shares of stock in said company contained upon the face thereof the stipulation that the same are transferrable only on the books of the company in person or by attorney, only upon the surrender of the certificate; that the said shares issued to said H. were liable to the plaintiff's garnishment, who were cred·itors of H., because they were never transferred on the company's books, or in any other manner so as to be binding against the plaintiffs; that the pretended transfer, set up by Brown, was fraudulent and void as against plaintiffs, who had no notice thereof, and that the said pretended transfer was secretly made, and contrived fraudulently to deceive, defraud, hinder and delay the just creditors of the said Hobby, wherefore the said shares were liable to the garnishment.

The evidence showed substantially that the Galveston city railway was a body corporate; that it issued to said H. the stock described in the answer of the said company (garnishee); that at the time of issuance and at the present time was in force such a regulation as that embraced in this statement concerning the transfer of stock; that on the face of the shares there was such a stipulation as that alleged; that H. delivered to Brown, prior to the service of the garnishment on the company, the said certificates, with a transfer signed in blank, in which the name of Brown did not appear, as collateral security for the several notes; that on September 20 Brown presented the stock certificates to the secretary of the company and demanded that they be regularly transferred to him on the books of the company, which the secretary refused, because of the garnishment served on the 9th of August previously, at which time the stock stood on the books in the name of H.; that the first notice,had by the company of Brown's claim, was on September 20, 1877, when the secretary inadvertently, and not remembering the garnishment proceedings, made out and delivered to Brown a receipt certifying, "that J. M. Brown is entitled to 528 shares of stock in the Galveston city

railroad to be delivered upon surrender of receipt;" that plaintiffs had no notice of the transfer or attempted transfer.

Under this state of the case the court gave judgment against H. by default, ordering the said certain lots to be sold, and on hearing of the intervention ordered that the said shares of said H. be sold as under execution, and the proceeds be first paid to Brown to the extent of his debt, and the remainder, if any, to plaintiff, to the extent of their debt after applping the proceeds of lots to be sold under attachment. The opinion discloses the assignments of error decided important or necessary in the determination of the case.

Opinion by West, J.

This case bears evidence of having been very carefully and faithfully briefed by both parties. The appellants seem to have presented the merits of their case as fully and as satisfactorily as could be done, or as was desirable it should be done. We have ourselves given a great deal attention to the main question, and have considered it with more than usual care.

We have no time at present to give at length the reasons why we believe the judgment in the case should be affirmed. We must be content therefore with stating as briefly as possibly the conclusions on the subject that we have reached.

We are then of the opinion that the delivery of, and transfer in good faith, for a valuable consideration, in the manner disclosed in the evidence, of the certificates in question, to the appellee, carried with it all the rights of the holder, Hobby, to them, and invested the appellee with the ownership, and entitled him to demand from the proper officers of the corporation, such action as was necessary for their books to show him to be the true owner.

In other words, by the delivery and transfer of the certificate, by Hobby to the appellee, as detailed in the evidence, the appellee became the owner of them, and Hobby was divested of any further right or interest in them, at least so long as the debt they were intended to secure, remained unpaid.

Hobby then having no interest in the certificates that could be reached either by attachment or execution at the time the writ of garnishment was served, the appellants acquired no rights by the service of such writ, as against the prior claim of the appellee.

Speaking of the effects of these transfers of stock that, like the one under consideration, are not made regularly on the books of the

corporation, in the last edition of Angell & Ames on Corporations the author says :

"The charter and by-laws frequently provide that the stock of the company shall be transferable on the books of the company only, or that to be valid and effectual the transfer must must be register- ed by the clerk or treasurer of the corporation on the company's books; and where the charter required the transfer to be made on the books, the registration was considered satisfied by a by-law, re- quiring the transfer to be registered on the books of the company. A very literal construction has been given in connection to such clauses, either in the charter or by-laws of a corporation; the scope and object of such provisions being, in the view of the supreme court of that state, "to render the purchase of stock secure to any person, if at the moment of his purchase, the company's books did not furnish evidence that it had been previously transferred." The settled law of Connecticut is that when such clauses are found in the charter or by-laws, or either, the transfer is invalid and of no ef- fect for any purpose, unless made or registered on the books of the company. The registry is there deemed the originating act in the change of title, and an entry by the clerk on the deed, "received for record," is not considered equivalent to a registry.

A more liberal construction, and one far more in accordance with their spirit and meaning, has been given to such clauses in charters and by-laws of corporations by the courts of other states. As they are intended merely for the protection of the interests of the corpo- ration, no effect is given to them further than is necessary to effect that purpose. It is necessary that an incorporated company should have the means of knowing who are the stockholders and members, in order that they may know to whom dividends are to be paid, and who are entitled to vote upon the stock, and where the company has relied upon the stock for debts due to it from a stockholder, that it should have the means of preventing a transfer in derogation of its own rights. To secure this knowledge, and to enable corporations to avail themselves of their lien upon the stock of the company, without danger to the rights of purchasers, these clauses are usu- ally inserted in their charters, or form a part of their by-laws. Ac- cordingly, where transfers of stock are made without conforming to the requisitions of the charter or by-laws in making them, or having them registered on the books of company, the better opinion deci-

dedly is, that the transfer passes to the purchaser all the right that the seller had; that such provisions were not intended to, and do not incapacitate the holder of the stock from transferring it at his pleasure by way of equitable assignment of his interest in it, subject to the charter rights of the corporation, which all must notice or compel him to own it, unless the corporation allow him to sell against his will, and the only effect allowed to them seems to be that the purchaser cannot claim a certificate of, or a dividnd upon the shares, unless he first applies for a transfer according to the charter and by-laws. Any other proper transfer is equally valid as between vendor and vendee, and even as against a creditor of the vendor who attached the shares before he or the corporation through its officers had notice of the transfer. In other words, such provisions, whether by charter or by-law, apply solely to the relation between the corporation and its stockholders—to the question who shall vote; to whom dividends shall be paid; and enable corporations to protect any lien it may have upon the stock, or equity in it, as between itself and the stockholders transferring it. They constitute a privilege of the corporation which may be waived or asserted at the pleasure of the directors and president." (Sections 353–354.)

This is now believed to be the rule most generally adopted. Judge Drake, in his fifth edition, (1878) of his new standard work on Attachment, endorses strongly the same doctrine. (Sections 527 and 608.) In the last edition (1882) of Daniels on Negotiable Instruments, the same rule is pronounced to be the best. (Vol. 2, Secs. 1708e, 1708f, pp. 720–1.) See also Stone vs. Brown, 54 Texas, 338; and Strange vs. H. & T. C. R'y, 53 Texas, 169; Iglehart vs. Moore, 21 Texas, 502; Le Gierse vs. Moore, 59, Texas, 471.

There are, no doubt, decisons of courts, the opinions of whose judges are entitled to the very highest respect, who seem to hold differently, yet we are satisfied that both, upon principle and authority, the rule above laid down, is more correct in point of law, and is the wiser and safer rule, to follow in practice.

We do not think it necessary to consider any of the other questions raised and discussed in the briefs of counsel.

We believe that the judgment, under all the circumstances of the case, ought to be affirmed, and it is accordingly so ordered.

Chief Justice Willie did not sit in this case.