Argued and submitted April 3, decided April 19, 1911.

## GRAY v. FANKHAUSER.

[115 Pac. 146.]

CORPORATIONS — CORPORATE STOCK — ASSIGNMENT — BONA FIDE PURCHASERS.

1. A blank assignment of stock certificates with power to transfer the stock on the corporate books, indorsed on the certificates, gave the assignee apparent absolute authority to deal with the certificates as owner, so that a pledgee in good faith of the assignee without notice of any infirmity in his title could apply the proceeds of the stock to the transferee's debt; the rights of innocent persons under such circumstances not depending upon the actual authority of the person with whom they deal, but upon the apparent authority vested in him by the true owner.

BANKS AND BANKING—NATIONAL BANKS—TRANSFER OF STOCK.

2. Rev. St. U. S. § 5139 (U. S. Comp. St. 1901, p. 3461), requiring stock to be transferred by indorsement on the corporate books, does not limit the right to pass title to stock certificates by assignment, being enacted for the protection of the banks, and the corporation being entitled to waive its provisions.

CORPORATIONS—CORPORATE STOCK—ACTIONS—JUDGMENT — CONDITIONAL JUDGMENT.

3. Where defendant, to whom stock actually belonging to plaintiff was pledged by one having apparent authority from plaintiff to use it as his own, showed no diligence to protect plaintiff after being informed of his rights, in an action to restrain the corporation from transferring the shares on its books, the stock will not be adjudged to be returned to defendant until his debt is paid by the pledgor, but will be held by the clerk of the court for a stated period, and plaintiff will be required to

deposit the amount of the debt due defendant with costs, disbursements, and attorney's fees; the stock otherwise to be returned to defendant, and defendant will be required to deposit the stock and receive the amount deposited by plaintiff, and, if he does not do so, the present value of the stock shall be deducted from the amount deposited by plaintiff.

From Marion: WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE MCBRIDE.

This is a suit by Charles A. Gray to restrain the Capital National Bank of Salem from transferring upon its books and returning to persons claiming to own the same, certain shares of stock in the defendant bank.

The complaint alleges that plaintiff in May, 1907, was the owner of 25 shares of stock, which were in the keeping of an agent of plaintiff in the city of New York, who wrongfully and without authority pledged them as collateral security for money borrowed by him from divers persons, who now claim to be the owners, and that in June, 1907, those persons, claiming to be the owners of 15 shares of such stock, represented by certificates numbered 131, 134, and 135, presented them to defendant, and demanded that they be transferred to themselves on the books of the corporation.

Defendant Fankhauser intervened and filed an answer, pleading the general issues, and setting up a special defense to the effect: That on January 17, 1907, defendant was a broker doing business in the city of New York. That on such date one Franklin R. Anson, being in possession of and representing himself to be the owner of 16 shares of the capital stock of the defendant corporation, represented by certificates numbered 132 and 133 for five shares each, and No. 117 for six shares, applied to him for a loan of $1,000 upon the security of these certificates, and that defendant, relying upon such security, lent Anson $1,000, taking from him a stock note which is as follows:

"New York, Jan. 17, 1907.

"$1,000.00.

"Two months after date for value received, I promise to pay to the order of C. K. Fankhauser, one thousand and no-100 dollars, with interest at six per cent after maturity, at office of C. K. Fankhauser, 27 William Street, New York City, and I have deposited with him, as collateral security for the payment of this liability 16 shares of the capital stock of the Capital National Bank, Salem, Oregon. Should the market value of said collateral decline or in the event of my failure to pay this obligation at maturity said C. K. Fankhauser or his assigns, shall have full power and authority to forthwith sell, assign, and deliver the whole or any part of said securities, at public or private sale, and without advertisement or notice to me, and with the right on his part to purchase the same at such sale freed and discharged from any equity of redemption. After deducting the amount of said liabilities, with all costs and expenses for collection, sale and delivery, to return the overplus, if any, to me. In consideration of the loan hereby made the borrower agrees that the said C. K. Fankhauser or assigns shall have the right to make such use of the collateral security herein named as he may desire, subject only to his obligation to deliver to said borrower the same number of shares of said stock upon the payment of this note at maturity; and in consideration of the above, the lender agrees that the borrower's liability shall be limited to the collateral security hereby pledged.

"Franklin R. Anson."

That each of the certificates had indorsed thereon the following transfer:

"For value received * * hereby sell, assign and transfer unto * * shares of the capital stock represented by the within certificate, and do hereby irrevocably constitute and appoint * * attorney to transfer the said stock on the books of the within named corporation with full power of substitution in the premises. Dated ———.

In the presence of                    Chas. A. Gray."
            Fred A. Legg.

That the note had not been paid, and that in June, 1907, the defendant Fankhauser furnished certificates No. 132 and No. 133 to the defendant corporation for the purpose of delivering the same to a prospective purchaser for the price of $1,020. That he was proceeding to sell the same for the purpose of repaying the amount due him upon the promissory note of Anson and for costs and expenses of collection and sales. The same facts were also pleaded by way of estoppel.

Plaintiff's reply put in issue the affirmative defenses interposed by defendant Fankhauser, and alleges that the certificates were delivered to Anson and indorsed in blank for the purpose of enabling him, as agent for defendant, to sell the same for defendant's benefit; that Anson never had any authority to mortgage, pledge, or hypothecate the stock, all of which facts were well known to defendant Fankhauser at the time he made the loan; and that at such date there had been no assignment or transfer on the books of the company, as Fankhauser well knew. The reply also charged fraud and collusion between Fankhauser and Anson.

There was a decree for plaintiff in the court below, and defendant Fankhauser appeals.     MODIFIED.

For appellant there was a brief over the names of *Messrs. Williams, Wood & Linthicum,* and *Mr. George G. Bingham* with an oral argument by *Mr. Bingham.*

For respondent there was a brief over the names of *Mr. John H. McNary* and *Mr. Charles L. McNary,* with an oral argument by *Mr. John H. McNary.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. The blank assignment made by Gray upon the delivery of the certificates to Anson gave to him the apparent authority to deal absolutely with the stock; and a pledgee in good faith, without notice of any infirmity

in Anson's title, is entitled to have the proceeds of the shares applied on Anson's debt. When the true owner places in the hands of another all the indicia of the ownership of property, so that he appears to have the full power of disposing of it, innocent persons dealing with such apparent owner will be protected. Their rights in such a case do not depend upon the actual authority of the person with whom they deal, but upon the apparent authority with which the confidence or negligence of the true owner has invested him: *McNeil* v. *Tenth National Bank*, 46 N. Y. 325 (7 Am. Rep. 341). Assignments in blank of the character of that now under consideration are perhaps the most common method of transferring the title to certificates of stock, and have been generally recognized by the courts of our great commercial states. *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30; *Kortright* v. *Buffalo Commercial Bank*, 20 Wend. 91. In the latter case the court says:

"The execution in blank must have been for the express purpose of enabling the holder, whoever he might be, to fill it up. If intended to have been filled up in the name of the first transferee, there would have been no necessity for its execution in blank. Barker might have completed the instrument. The usage, however, is well established, and was fully understood by Barker, as he made the transfer in conformity to it; and he or those setting up a claim under him should not now be permitted to deny its validity. The filling up is but the execution of an authority clearly conveyed to the holder, is lawful in itself, and convenient to all parties, as it avoids the necessity of needlessly multiplying transfers upon the books."

2. We cannot agree with counsel that the national banking act limits the right of passing title to stock certificates by assignment. The provisions of the United States Revised Statutes, § 5139 (U. S. Comp. St. 1901, p. 5139), and similar state statutes, providing that stock shall be transferred by indorsement on the books of the

corporation, have generally been held to be for the protection and convenience of the bank, and that no effect should be given to them except for the protection of the corporation which can waive them at pleasure: *McNeil* v. *Tenth National Bank,* 46 N. Y. 325 (7 Am. Rep. 341), was a case arising upon a pledge of certificates of national bank stock under circumstances exactly similar to the case at bar, and it was there held that an assignment in blank, almost word for word in the same language as used in the assignment in the present case, transferred the entire title to the shares, both legal and equitable. That case is so thoroughly discussed and its every feature so similar to the one at bar that we feel constrained to adopt it as aptly expressing our opinion on the contentions here involved. It follows from these considerations that plaintiff is not entitled to the possession of the stock in question until he redeems by paying the Anson note, with interest, and the question now is with regard to the remedy which should be applied to do justice to both parties.

3. Fankhauser has shown no diligence to protect plaintiff after being informed of his rights, and, under the circumstances, we think that it will be better to retain this case and see that both parties receive their dues, rather than return the stock to the defendant, who might be tempted to pursue his own advantage in preference to the mutual advantage of himself and plaintiff. We will therefore direct that defendant corporation deposit the ten shares held by it with the clerk of this court, and that plaintiff deposit, within thirty days, with the clerk, the sum of $1,000, due upon the note, with interest at six per cent from maturity, and the costs and disbursements of this suit, with $160 attorney fees and expenses; that such sum be held for sixty days, within which time the defendant shall deposit with such receiver the six shares of stock now in his hands, and thereupon the receiver shall pay him the amount deposited, as before required, and

return to Gray the 16 shares of stock; and that if defendant shall fail to deposit the six shares he shall be charged, by supplemental decree herein, with the sum of $146 per share, the present value of the shares of stock, and such sum deducted from the amount of money paid by Gray. In case Gray fails to deposit the sum of money required herein, within thirty days from the rendition of the decree, the stock shall be returned to defendant Fankhauser and he shall be decreed, by a suitable supplementary order herein, to recover his costs, expenses, and attorney fees, as above indicated.                    MODIFIED.