Hillsborough,
March 3, 1936.

### MARY A. HOWISON

*v.*

### MECHANICS SAVINGS BANK, & a.

*Charles A. Perkins* and *McLane, Davis & Carleton (Mr. Carleton* orally), for the plaintiff.

*Warren, Wilson, McLaughlin & Bingham,* and *John J. Sheehan* and *J. Walker Wiggin (Mr. Wiggin* orally), for the defendant bank.

PAGE, J.   There may be some doubt whether P. L., *c.* 225, *s.* 52 was intended to apply to transfers or powers of attorney in blank, delivered without authority, as well as to those technically completed and delivered with authority of the assignor.   If it applies, the plaintiff is without standing.   But the same result is reached, for purposes of this case, by another route.

The facts recited develop a situation which in all its main essentials has been the subject of frequent judicial decision.   The weight of authority is overwhelming that in a case like this the holder for value in good faith, without notice of the secret trust existing between the true owner of the shares and the owner's faithless agent or trustee, may hold the shares unless, in the case of pledge, the true owner redeems them.   *Nelson* v. *Owen,* 113 Ala. 372; *Brittan* v. *Bank,* 124 Cal. 282; *O'Mara* v. *Newcomb,* 38 Colo. 275; *McCarthy* v. *Crawford,* 238 Ill. 38; *Meier* v. *Bank,* 83 Ind. App. 109; *Nolan* v. *Robertson,* 131 Kan. 333; *Citizens Bank* v. *Company,* 206 Ky. 86; *Russell* v. *Company,* 180 Mass. 467; *Austin* v. *Hayden,* 171 Mich. 38; *Stone* v. *Marye,* 14 Nev. 362; *McNeil* v. *Bank,* 46 N. Y. 325; *Mount Holly &c. Co.* v. *Ferree,* 17 N. J. Eq. 117; *Green* v. *Furniture Lines,* 198 N. C. 104; *Dueber &c. Co.* v. *Daugherty,* 62 Oh. St. 589; *State &c. Bank* v. *Scales,* 60 Okl. 225; *Gray* v. *Fankhauser,* 58 Ore. 423; *Shattuck* v. *Company,* 205 Pa. St. 197; *State Bank* v. *Cox,* 11 Rich. (S. C. Eq.), 344; *Garvin* v. *Pettee,* 15 S. D. 266; *Cherry* v. *Frost,* 7 Lea (Tenn.) 1; *Strange* v. *Company,* 53 Tex. 162; *Garfield &c. Co.* v. *Argyle,* 64 Utah 572; *National &c. Co.* v. *Hibbs,* 229 U. S. 391; *National &c. Co.* v. *Gray,* 12 App. D. C. 276; *Colonial Bank* v. *Cady,* 15 App. Cas. 267 (doubted in *Fox* v. *Martin,* 64 L. J. Ch. (N. S.) 473, in 1895, but followed by *Fuller* v. *Glyn,* [1914] 2 K. B. 168); *Duggan* v. *Company,* 18 Ont. App. 305.

All of the foregoing cases, except six, go expressly on the theory of estoppel.   In four of the six, the reasoning shows estoppel to have been the real basis of the decisions.   Another, without reasoning, rests upon the authority of *McNeil* v. *Bank, supra,* perhaps the leading case of estoppel, though suggestions of the doctrine were thrown out many years before (*Jarvis* v. *Rogers,* 13 Mass. 105).   The remaining case, devoid of reasoning and nearly of citation of authority, is at least consistent with the long line of cases that have expounded the theory of estoppel.

Against this array of authority in more than twenty-five jurisdictions, one jurisdiction long stood alone.   *Taliaferro* v. *Bank,* 71 Md. 200.   But the passage in Maryland of the uniform stock transfer

act has brought that state into line. *Jenkins* v. *Company*, 150 Md. 416.

Behind the doctrine of estoppel lies the convenience, and even necessities, of the enormous volume of business dealings that have grown up in connection with shares of corporate stock. The background was well stated by Mr. Justice *Davis* in 1870 (*First National Bank* v. *Lanier*, 11 Wall. 369, 377):

"It is no less the interest of the shareholder, than the public, that the certificate representing his stock should be in a form to secure public confidence, for without this he could not negotiate it to any advantage. It is in obedience to this requirement, that stock certificates of all kinds have been constructed in a way to invite the confidence of business men, so that they have become the basis of commercial transactions in all the large cities of the country, and are sold in open market the same as other securities. Although neither in form or character negotiable paper, they approximate to it as nearly as practicable ... it is easy to see why investments of this character are sought after and relied upon. No better form could be adopted to assure the purchaser that he can buy them with safety. He is told, under the seal of the corporation, that the shareholder is entitled to so much stock, which can be transferred on the books of the corporation, in person or by attorney, when the certificates are surrendered, but not otherwise. This is a notification to all persons interested to know, that whoever in good faith buys the stock, and produces to the corporation the certificates, regularly assigned, with power to transfer, is entitled to have the stock transferred to him. And the notification goes further, for it assures the holder that the corporation will not transfer the stock to any one not in possession of the certificates."

The *Lanier* case did not involve the precise question with which we are now dealing. The court held that where a shareholder assigned a certificate, with the usual power of attorney to transfer the shares, to a *bona fide* purchaser for value, and the original owner had already pledged it by separate power of attorney to a bank, without delivery of the certificate to the bank, the *bona fide* purchaser would prevail. But the decision involves the point of departure for the whole doctrine with which we deal.

The first postulate is that possession of the certificate and *indicia* of ownership (a power of attorney signed by the face-owner of the certificate) shall be in the same hands at the same time. Given this, those dealing with the possessor have, in the business sense, for many

years regarded the possessor as the owner. Relying upon the right of such a possessor to procure at will a transfer of the shares on the books of the corporation, buyers and sellers, bankers and brokers, borrowers and pledgees, have consistently and confidently, as shown by the litigated and reported cases, passed certificates freely from hand to hand provided they bore the blank indorsement of the face-owner or were accompanied by a power of attorney to transfer executed by him in blank.

The analogy to negotiable instruments is so approximate as to have caused inaccuracies of statement. Such stock certificates are not negotiable instruments, and it does not help to call them *quasi*-negotiable. The law does not regard them, and cannot regard them, in precisely the same light. Probably all that can be said is that the exigencies and custom of business gave rise to the law merchant, while the more recent needs of business and the customs of bankers, brokers and their customers have led the courts to apply such already recognized principles of law as will enable those dealing with stock certificates to do so as conveniently and safely as may be with respect to their peculiar customs.

If the custom appear that purchasers and lenders take such securities freely and deal with them in the form stated upon the belief that the possession is lawful and that the possessor has authority to dispose of the securities, the courts will protect those taking so far, and so far only, as the doctrine of estoppel will permit. The essential elements of the estoppel in such case are: (1) the custom, (2) some act or conduct of the true owner of the certificate upon which a taker may rely, (3) reliance upon that act to the taker's prejudice, and, implicit in the last element, the showing that the taker obtained possession in good faith and for value. It is believed that this is a sufficiently accurate statement of the principles to be gathered from the authorities cited.

(1) Most courts apparently accept the custom as a matter of common knowledge. In Massachusetts, a narrower rule prevails, and the custom must be found, upon evidence, for banks to take paper "in order" from reputable brokers. *Scollans* v. *Rollins*, 173 Mass. 275; 179 Mass. 346; *Baker* v. *Davie*, 211 Mass. 429. Compare *National &c. Co.* v. *Hibbs*, 229 U. S. 391. We do not need to determine whether the court may take judicial cognizance of the custom, for the master has found that the custom is for banks to rely solely on the form of the indorsement used in this case when dealing with a reliable customer, and it further appears that the instrument was

"in order" in the sense that it bore the guaranteed signature of the plaintiff to a blank assignment and power of attorney to transfer.

(2) It also appears that the plaintiff performed an act calculated to create confidence in the instrument as a means of passing title to the shares. She signed the blank assignment and power of attorney on the back of the certificate, had her signature guaranteed, and delivered the paper to Dowd. The delivery was wholly voluntary. There was nothing which could warrant the holding that she had not consciously delivered the instrument in that form. She had not lost it without negligence, it had not been stolen, her indorsement had not been forged. *Nelson* v. *Owen*, 113 Ala. 372; *Scollans* v. *Rollins*, 179 Mass. 346; *Schumacher* v. *Company*, 117 Minn. 124; *First National Bank* v. *Bank*, 156 N. Y. 459; *Farmers' Bank* v. *Company*, 66 Oh. St. 367; *State &c. Bank* v. *Scales*, 60 Okl. 225; *Unity Banking Co.* v. *Bettman*, 217 U. S. 127; *Bangor &c. Co.* v. *Robinson*, 52 Fed. 520.

It is true that she did not intend Dowd to use the certificate as he did, and, as between her and her agent, the secret trust left him with no authority to pledge it. But she did consciously place in his hands a certificate intentionally prepared so that it might be sold by Dowd and title passed to the shares without any further act on her part. She did not authorize him to part with title by way of pledge, or to part with it at all unless she should die before returning from Florida. Estoppel, however, does not rest upon the actual title or authority of a defaulting agent, but upon the act of the true owner in giving him what may be understood as apparent title or authority. *McNeil* v. *Bank*, 46 N. Y. 325; *Baker* v. *Davie*, 211 Mass. 429; *Johnson* v. *Milmine*, 150 Ill. App. 208; *Gray* v. *Fankhauser*, 58 Ore. 423.

The limitation of Dowd's authority by secret trust is immaterial as far as the defendant bank is concerned. So also is the plaintiff's knowledge or lack of knowledge of the custom of business men. As *Holmes*, C. J. once remarked, "she knew that she was putting into her agent's hands an instrument which made actual deceit possible," and she took "the risk of the appearances being interpreted as it is usual for business men to interpret them." *Russell* v. *Company*, 180 Mass. 467. And the same justice said of the custom: "It simply fixes the meaning of an ambiguous expression, for the purpose of determining whether it is open to the former owner to deny that the property . . . passed to another." *Scollans* v. *Rollins*, 179 Mass. 346, 353. Consequently no secret trust limiting the apparent implications as to title and authority will be permitted to avoid the estoppel. *Furber* v. *Dane*, 203 Mass. 108. Even if the plaintiff had

not in fact contemplated a possible sale of the stock, but had merely delivered the certificate to her broker in order to have it transferred on the books of the company into certificates, the estoppel would run. *Union Trust Co.* v. *Oliver*, 214 N. Y. 517.

The courts have always been troubled when one of two innocent persons must suffer for the perfidy of an agent or trustee. The choice is not arbitrary, however, and cases like this turn upon the familiar principle that the loss will fall on the one whose conduct made it possible for the loss to occur. That person is the plaintiff, who clothed her agent with apparent title and actual power to do what he did. *McNeil* v. *Bank*, 46 N. Y. 325; *Russell* v. *Company*, 180 Mass. 467; *National &c. Co.* v. *Hibbs*, 229 U. S. 391; *Otis* v. *Gardner*, 105 Ill. 436; *Reed* v. *Linscott*, 87 N. H. 139, 143.

(3) The third element necessary to establish estoppel is that the bank must be shown to have taken the certificate in pledge for value, in good faith relying upon the apparent authority given by the plaintiff to Dowd. There is no question that the bank gave value—$9,000 loaned to Dowd. Whether the bank took in good faith with respect to pre-existing loans is a question upon which the authorities are somewhat divided, but it is assumed that the question is not raised here. Nor is there any present question regarding the marshalling of collateral as between the $9,000 loan and the later loan of $2,300. If the plaintiff should amend her bill by a prayer for redemption, these questions would be open to her.

The master has found that the bank had no suspicion or cause for suspicion that Dowd was not the true owner of the stock, and that it relied solely on the form of the indorsement as it is the custom of banks to do. Nevertheless the master also found that Dowd made no representation of title to the bank, that the bank knew that Dowd frequently had in his possession stock indorsed as this was, sometimes his own, sometimes belonging to others, and that the bank made no inquiry as to title or authority. It was further found that the officer who acted for the bank in making the loan believed that if inquiry had been made Dowd would have told the truth and disclosed the secret trust. These findings, it is contended, are inconsistent with the general finding that the bank took "in entirely good faith."

The plaintiff relies particularly on *Reed* v. *Linscott, supra,* 139 as support for argument that the bank was under the duty of inquiring whether this particular certificate belonged to Dowd or to one of his customers. Upon the facts in that case we held that possession gives third persons no right to assume the possessor's title or power of dis-

posal as against the owner. That was said regarding the sale of an automobile by a dealer as agent for the owner, it being known to the purchaser that the dealer sold sometimes his own cars, sometimes those belonging to others. There the owner of the car was held not estopped to assert title. The purchaser was not misled by the appearance created by the true owner; knowing the doubt whether the dealer or somebody else owned it, he was put upon inquiry.

The possession of the automobile alone was the reliance of the purchaser. In this case the bank relied upon possession, plus *indicia* of ownership, including proof of the authenticity of the plaintiff's signature to the muniment of title. But more important still, the bank relied upon the proved custom of bankers in the taking of securities in that form without inquiry as to title. It is the distinction between possession alone and possession coupled with *indicia* of ownership and right of disposition that forms the basis of the custom of business and the court's recognition of that custom. *McNeil* v. *Bank*, 46 N. Y. 325, 330; *Fowles* v. *Bank*, 167 Cal. 653, 660; *O'Mara* v. *Newcomb*, 38 Col. 275, 278.

In dealing with chattels, we have recognized this very distinction. One who permits his agent to go at large with a horse owned by the former and a bill of sale improperly obtained by the agent in his own name, but known by the principal to exist, is estopped to claim title as against one who purchases from the agent in good faith for value, relying upon the apparent title and power of disposal possessed by the latter. *Nixon* v. *Brown*, 57 N. H. 34.

The essence of the custom and of the law sustaining it is that the taker of certificates accompanied by a blank assignment and power to transfer, signed by the face-owner, may take it without inquiry unless the papers on their face show some special warning that puts the taker on inquiry. The ambiguity spoken of by Chief Justice *Holmes* as existent in every instrument in blank form does not call for inquiry. That ambiguity the custom and the law resolve in favor of the good faith of the taker. Consequently inquiry is not required solely by the fact that the one who presents the certificate is known to be a broker or that the face-owner of the certificate does not himself present the certificate. *Fowles* v. *Bank*, 167 Cal. 653, 662; *Powers* v. *Company*, 206 Cal. 334; *Meier* v. *Bank*, 83 Ind. App. 109, 120; *Crawford* v. *Company*, 236 Pa. St. 206; *State Bank* v. *Cox*, 11 Rich. (S. C. Eq.), 344. A contrary holding would, of course, leave the custom unrecognized and unpracticed.

The question of good faith is one of fact for the trial court. So

also is the subsidiary question whether the taker has such notice of defect in title or authority as lays upon him the duty of inquiry. *Northwestern &c. Co.* v. *Company*, 174 Cal. 308, 312.

Of course there may appear on the face of the papers data which will put the taker on inquiry. Thus if Mrs. Howison were shown on the certificate to be a trustee, the bank would have been put on inquiry if she had presented the certificate as collateral upon her individual debt. *Scollans* v. *Rollins*, 179 Mass. 346, 353; *Clemens* v. *Hecksher*, 185 Pa. St. 476; *Duncan* v. *Jaudon*, 15 Wall. 165; *Winter* v. *Company*, 89 Ala. 544, 548.

If the plaintiff had in some way given notice of the secret trust, as by not indorsing the certificate but by giving a separate power of attorney to sell and transfer stating the specific purpose she had in mind, the bank would of course have been put upon inquiry, and incidentally the plaintiff would not have been estopped to assert her title. It lay in the power of the plaintiff to protect the bank, as well as herself, from the perfidy of Dowd by the simple expedient of not giving him possession, with proof over her own signature of his apparent title and authority of disposition. *Shattuck* v. *Company*, 205 Pa. St. 197; *Cherry* v. *Frost*, 7 Lea (Tenn.) 1; *Wolf* v. *Bank*, 214 Fed. 761.

In view of the foregoing, the findings of the master are not inconsistent and are sufficient to establish the good faith which he has found marked the bank's dealings with the plaintiff's certificate. Dowd's rascality was unknown to them. His prior dealings with the bank had established confidence; there was no suspicion, or cause for suspicion, of his honesty. Even after the fact, the officer of the bank expressed the belief that if he had inquired of Dowd whether the stock was his, Dowd would have told the truth. In the face of such a strong belief in Dowd's honesty, there was no reason for finding that the bank's failure to inquire was conclusive of bad faith. The general finding of good faith and lack of suspicion cannot be vitiated solely by the appearance of the plaintiff's name on the face of the certificate, the fact that Dowd was a broker known at times to have on hand customer's certificates indorsed in blank, and the further fact that the bank did not inquire. The custom is not to inquire when the facts are those that are here found, but to rely upon the appearances voluntarily created by the true owner.

In the face of such a general custom, it would be a curious result to hold that the bank failed to exercise reasonable diligence merely because it did not inquire. The papers were all "in order" and there

was no reason to suspect the honesty of the broker, into whose hands the plaintiff had intrusted the certificate in such form that a purchaser could demand a transfer on the books of the company by merely writing his name in the blanks left in the indorsement. In the want of other notice putting the bank on inquiry than is here found, the finding of good faith is amply sustained. If the bank had been dealing with a known agent, the apparent scope of Dowd's authority would be that authority which a reasonably prudent man, induced by the principal's acts or conduct, and in the exercise of reasonable diligence under similar circumstances, would naturally suppose Dowd to have. *Atto* v. *Saunders*, 77 N. H. 527, 529. There seems to be no reason for applying a stricter rule where the fact of agency is unknown and the appearance given is of ownership with power to transfer. In both cases the principle of estoppel is applied. It is not a question of authority in fact, but of reliance upon appearances. The test of reliance is whether others, under like circumstances, would have believed that Dowd had authority to transfer and would have acted in reliance upon the appearances. The finding that the bank acted in accordance with custom disposes of that question.

The fact that Dowd made no representation as to his title and authority is immaterial. For purposes of this case the only material representation is the conduct of the plaintiff in putting into Dowd's hands possession of the certificate, with *indicia* of apparent ownership and power of disposal.

The conclusion reached is consistent with Restatement, Trusts, ss. 284, 297. Unless the plaintiff redeems the pledge, there must be

*Judgment for the defendant bank.*

All concurred.