JACOB I. COHEN ET AL
vs.                      } DECEMBER TERM, 1848.
WILLIAM GWYNN ET AL.

[TRANSFER OF STOCK—NOTICE.]

THE stockholders of a theatre appointed six persons trustees for its management by whom the transfer books were kept, and in 1841, two shares standing in the name of one of the stockholders was transferred by the firm of which he was a member to a *bona fide* purchaser for value without notice, in whose name they remained until 1848, (he in the mean time having transferred them to parties who retransferred them to him,) when objection was made by the other stockholders to the title of such purchaser.   HELD—

That the trustees, were the trustees of the stockholders, and if they suffered the stock to be transferred to a *bona fide* purchaser without notice, by a person not having authority to make the transfer, the loss, in a contest between such purchaser and the stockholders, must fall upon the latter.

A memorandum made on the transfer book *after* the purchase of the stock by a *bona fide* purchaser, showing the arrangement under which certain of the stock was transferred, cannot effect such purchaser with notice of this arrangement.

[In this case a decree for the sale of the Holliday Street Theatre, in the city of Baltimore, was passed, the sale made and ratified, and the proceeds brought into court for distribution. A statement of the proceedings up to the ratification of the sale will be found in the cases of *Wagner & Marshall* vs. *Cohen*, 6 *Gill,* 97, and *Cohen* vs. *Wagner,* 6 *Gill,* 236. The questions now decided by the Chancellor arise upon the distribution of the proceeds, and are presented by a petition filed on the 20th of September, 1848, by James V. Wagner and others, and exceptions to the Auditor's account filed by the same parties about the same time.

The petition in substance alleges, that certain persons including B. I. Cohen, were trustees of the Holliday Street Theatre property, and as such received large funds into their hands for which, with the exception of said Cohen, they had all faithfully accounted. That said Cohen, on the 18th of December, 1839, borrowed of the treasurer of the said board of trustees $462 50, of the trust funds, for which he gave his bond of that date, which is filed with the petition. That afterwards, on the 20th of October, 1842, said Cohen agreed to transfer shares of stock at $125 per share, to cover his indebtedness, the other trustees doing the same thing, at the same time, and have done so, which shares they have also brought into distribution among the stockholders in this case. That Mendez I. Cohen was aware of such arrangement and has repeatedly stated that the trustees of the theatre had stock transferred to them belonging to the theatre. That said Mendez, knowing such fact, obtained a transfer of thirty-five shares of said stock from J. I. Cohen & Brothers, in which said B. I. Cohen was interested to an amount exceeding four shares. That said B. I. Cohen died, leaving one share standing in his name, and that letters of administration upon his estate have been granted to his son, Israel I. Cohen, who holds assets sufficient to meet this claim, and who is now claiming the dividend on said share. The petition prays, that said Israel I. Cohen may pay into court the amount of the bond given by his father, or deliver up to be cancelled four shares of the stock of the theatre, or that he may deliver up the said one

share, and the said Mendez I. Cohen may deliver up three shares of his stock to be cancelled, so that the value of said four shares may be divided among the other stockholders.

Mendez I. Cohen, by his answer, under oath, sets up the defence that he is a *bona fide* holder and purchaser of the stock held by him in the said theatre, for value paid, and without notice, knowledge or belief of the existence of any arrangement or understanding between the said B. I. Cohen and the other trustees at the time of his purchase, and that he is not responsible in any way for the failure of the said B. I. Cohen, to comply therewith if any be established. He admits that he knew from the transfer books, that the trustees, other than B. I. Cohen, had stock in their names, and no doubt he has so stated. He further admits that he purchased stock from the house of J. I. Cohen & Brothers, in which the said B. I. Cohen was interested as a partner, and it may be that his interest in the stock they held ascertained by his interest in that house exceeded four shares, but with that he submits he has no concern and has no knowledge.

The proof taken, and the other proceedings in the case upon this petition, and the exceptions, are sufficiently stated in the opinion of the Chancellor.]

THE CHANCELLOR:

This case comes before the court upon exceptions to the report of the Auditor, but the agreement of counsel filed on the 12th inst., reduces the questions in controversy to two.

The first of these, and the only one which has been argued, has respect to the ownership of the two shares of stock in the Holliday Street Theatre, the proceeds of the sales of which, made under a decree of this court, are now to be distributed. The shares in controversy are designated by the numbers 44 and 76, and were together with thirty-three other shares of like stock transferred to Mendez I. Cohen, by J. I. Cohen, Jr. & Brothers, on the 14th of June, 1841.

It appears by the transfer book that shares numbered 44 and 76, were transferred to B. I. Cohen, who was a partner in the

Banking House of J. I. Cohen & Brothers, in the year 1839, by the then proprietors thereof, and that no transfer of these shares was ever made by B. I. Cohen individually.

It also appears, that in the year 1827, six gentlemen were appointed trustees of the theatre, under an agreement between the stockholders and William Warren, the terms of which are stated by Mr. Meredith, in his deposition. The trustees were Messrs. Gwynn, Lucas, Stewart, Frick, B. I. Cohen and Meredith.

By an arrangement, the details of which are given in the deposition of the same gentleman, certain shares of stock which stood in the name of B. I. Cohen were transferred by him to individual members of the trustees in extinguishment of a debt due by Cohen to the trust fund, with an understanding that each of the trustees to whom transfers were thus made should give bond for the same, and should also, as a further security, retransfer the stock to the treasurer of the board of trustees, retaining, however, the use of the shares until they should be called upon to surrender them. Bonds were accordingly given by all the parties, including B. I. Cohen, who retained four shares under the arrangement, and in November, 1842, all the parties except Cohen, retransferred to the treasurer the shares placed in their respective names, with a memorandum opposite each transfer, in the transfer book, that the same was made as collateral security for the bonds given by them as above mentioned.

On the 11th of April, 1843, Mendez I. Cohen transferred to Johnson & Lee, the same thirty-five shares which on the 14th of June, 1841, had been transferred to him by J. I. Cohen & Brothers, and on the 23d of May, 1843, Johnson & Lee retransferred the same thirty-five shares to him.

B. I. Cohen having died indebted to the trust fund in the amount of the bond so given by him, being $426 50, and having but one share of stock now standing in his name, certain parties, having an interest in the fund for distribution, object to the allowance to Mendez I. Cohen, of the dividend due upon shares numbered 44 and 76, because as they allege, these shares constituted a part of the trust fund, and were known to be such

when he acquired them. The objection which was presented by petition and exception to the report of the Auditor, extended originally to four shares, parcel of the 35 shares transferred to Mendez I. Cohen, in 1841, but by the agreement before spoken of, has been narrowed down to the two shares numbered 44 and 76.

Mr. Cohen, by his answer, upon oath, takes the ground that he was a *bona fide* purchaser, for value of these shares, without notice of the arrangement between B. I. Cohen and the other trustees, and it appears by the evidence that he did purchase, and pay a valuable consideration for them, to the Banking House of J. I. Cohen & Brothers. He gave one hundred and forty dollars per share for them, and the Banking House being indebted to him in a larger amount at the time of the purchase they were paid for by debiting his account on the books with the amount.

The transfer book kept by the trustees of the theatre, which has been offered in evidence, shows that the shares in dispute were in fact transferred to Mendez I. Cohen by J. I. Cohen & Brothers, in June, 1841, and as the transfers made by the trustees of the shares of stock which they received of B. I. Cohen, under the arrangement spoken of by Mr. Meredith, were not made until 1842, and as the memorandum placed opposite to these transfers is the only evidence relied upon to bring home to Mendez I. Cohen notice of the nature of that arrangement, it seems very clear that he cannot be affected with notice.

Mr. Cohen does not deny that he had notice from the transfer books, that the trustees (other than B. I. Cohen) had stock in their names, but there is nothing to show that in June, 1841, when he received from J. I. Cohen & Brothers, for a valuable consideration paid them, a transfer of the shares in question, he knew of the arrangement between B. I. Cohen and the trustees. The entry in the transfer book relied upon to affect him with notice, was made at a subsequent period.

But it is said, that the transfer of these two shares by Cohen & Brothers to Mendez I. Cohen is void, because they belonged not to those parties but to B. I. Cohen individually.

30*

B. I. Cohen, however, was a member of that firm, and it no where appears that he made any objection to their authority to make the transfer. This transfer was made in 1841, and it is not until 1848, that the power under which it was made is questioned. On the contrary, in 1843, Mendez I. Cohen's right to deal with these shares as his property is recognized by the transfer made by him in April of that year to Johnson & Lee, and by their retransfer to him in May following.

The question to be decided is between a *bona fide* purchaser for value and without notice, on the one side, and the general mass of the stockholders on the other. The transfer book which appears to have been very carefully kept, was of course at all times open to the inspection of the trustees, and was, in fact, kept by one of them. It contains the evidence of the title of the shareholders to their stock, and a purchaser might well suppose that his title was good to shares transferred to him upon the book, and permitted to remain in his name without objection for a number of years. It seems to me, that in a question affecting the validity of a transfer under the circumstances of this case, between a *bona fide* purchaser, without notice, and the stockholders generally, that the latter must be concluded by the conduct of the trustees, active or permissive, in suffering the transfer to be made and to stand. It is true, this was a private association and not a corporation, but still trustees were appointed by the agreement, and for the benefit of the stockholders, and I cannot bring myself to think that it would be just to permit the mass of stockholders to exclude an individual stockholder from participation in the fund upon the ground that his title to shares standing in his name was defective when the trustees permitted that title to pass to him, and to remain in his name upon books kept by them for the purpose, this book being the only evidence of title.

The case in some respects is very like the case of the *Farmers and Mechanics Bank of Frederick and others* vs. *Wayman and Stockett*, decided by the Court of Appeals in December, 1847, 1 *Gill*, 336. In that case the bank had permitted certain shares of stock, held in trust, to be transferred by persons not

having authority to do so, to a *bona fide* purchaser without notice, and the court recognizing the validity of the title of the purchaser, decided that the banks should make good the trust fund, provided, it was not reimbursed by the parties who received the money from the purchasers. It was suggested in the argument that that case differed from this, because, in that, the question was supposed to be between the trustees and the purchaser, whilst in this it is between the purchaser and the stockholders. But the decision that the banks should make good the trust fund in that case, was of course, a decision that the stockholders should make it good, the latter being in effect the banks.

The ground of the decision was, that the banks having notice of the trusts with which the stock was clothed, and its officers being the trustees of the stockholders, could not, without making the bank responsible, by negligence or mistake, allow the title to pass by a transfer by any others than by those having competent authority to do so.

So in this case, the trustees were the trustees of the stockholders, and if they suffer stock to be transferred to a *bona fide* purchaser, without notice, by a person not having authority to make the transfer, the loss, in a contest between such purchaser and the stockholders ought to fall upon the latter. This appears to me the clear equity of the case, and I shall so order.

The petitions and exceptions also object to the allowance to the administrator of B. I. Cohen, and as by the agreement it is admitted, that this exception is well taken, the costs of the petition and exceptions will be allowed.

THOS. G. PRATT, for Exceptants.
R. W. GILL, for Cohen.