SHEAR CO. v. WILSON et al. *
(No. 735–4671.)

(Commission of Appeals of Texas, Section B. March 2, 1927.)

1. Corporations 134—Any act done or suffered by corporation investing new party with ownership of shares, without surrender of certificate, renders corporation liable to real owner (Vernon's Sayles' Ann. Civ. St. 1914, art. 1168).

In view of Vernon's Sayles' Ann. Civ. St. 1914, art. 1168, any act done or suffered by corporation which invests new party with ownership of its shares without due presentation and surrender of its certificate renders corporation liable to real owner as for their conversion.

2. Corporations 130—In absence of contrary notice, corporation is justified in transferring stock certificate properly indorsed by record holder of legal title.

In absence of notice to the contrary, corporation in matter of transferring shares is justified in acting on presentation of certificate properly indorsed by record holder of legal title to shares presented.

3. Corporations 130—"Properly indorsed," within by-laws providing for transfer of stock certificates, means indorsed so as to transfer title.

The term "properly indorsed," within by-laws of corporation that stock certificates were transferable on surrender thereof properly indorsed, means indorsed in such a way as to transfer title to shares.

**4. Corporations ⚙⟿127—Transfer and reissuance of shares of stock of married woman could be effected only on signatures of husband and wife (Rev. St. 1925, art. 4614).**

If corporation had notice that, at time certificate of stock was surrendered for reissuance, shares belonged to a married woman, reissuance within Rev. St. 1925, art. 4614 (4621), could have been effected only on joint signature of husband and wife.

**5. Evidence ⚙⟿53—Presumptions will not be indulged contrary to known facts.**

Presumptions, however wholesome, will not be indulged contrary to the known facts.

**6. Corporations ⚙⟿428(11)—Presumption that officer will disclose to principal information he possesses is not indulged, where it is to officer's profit not to disclose.**

Presumption that officer or agent will perform duty to principal by imparting material information affecting principal he may possess is not indulged, where it is to personal profit or interest of agent or officer not to make disclosure.

**7. Corporations ⚙⟿428(7)—Knowledge of president of corporation as to stock sold by him becoming property of married woman held imputable to corporation.**

Where, in surrender and reissuance of shares of stock, interests of president and corporation were not antagonistic, knowledge of president, who sold stock he owned, as to its becoming separate property of a married woman who purchased it, *held* imputable to corporation.

**8. Appeal and error ⚙⟿387(3)—Appeal bond filed June 29 held properly filed within 20 days after possible expiration of April term of Seventy-Fourth district court (Vernon's Ann. Civ. St. Supp. 1918, art. 30, subd. 74).**

Since April term of Seventy-Fourth district court, under Vernon's Ann. Civ. St. Supp. 1918, art. 30, subd. 74, may or may not continue more than eight weeks, appeal will not be dismissed where appeal bond was filed on June 29, but within 20 days after possible expiration of regular term.

Error to Court of Civil Appeals of Tenth Supreme Judicial District.

Suit by the Citizens' National Bank of Waco against the Shear Company, in which Mrs. Grace J. Witherspoon, T. C. Phillips, and Mrs. Nettie Wilson were interpleaded, and the two latter filed cross-actions. Judgment for plaintiff against T. C. Phillips and Mrs. Nettie Wilson, and for defendant the Shear Company against Mrs. Nettie Wilson, was affirmed in part and reversed and remanded in part by the Court of Civil Appeals (284 S. W. 654), and defendant and T. C. Phillips bring error. Affirmed in part, and reversed and remanded in part.

Williamson & McDonnell, of Waco, for plaintiffs in error.

Williams, Williams, McClellan & Lincoln, of Waco, for defendants in error.

SPEER, J. The following statement by Justice Stanford of the Court of Civil Appeals is sufficient:

"This suit was filed by the Citizens' National Bank of Waco against the Shear Company as sole defendant, and, as set out in its amended pleading, alleged that on May 23, 1921, C. W. Wilson was the owner of certificate No. 16 for 25 shares of the capital stock of the Shear Company, and on said date, in order to secure a loan of $4,000 from said bank, pledged and delivered said certificate of stock to it; that the said C. W. Wilson failed to pay said loan when due, and said bank sold said certificate of stock under its collateral agreement with C. W. Wilson, and became itself the purchaser thereof; that it then presented said certificate of stock to the Shear Company for cancellation, and demanded that said company issue to it a certificate of stock for the same amount, which it refused to do. The Shear Company filed its original answer, which was, in effect, a bill of interpleader, in which it disclaimed any interest in said 25 shares of stock sued for, but alleged that T. C. Phillips and Mrs. Nettie L. Wilson were asserting claim to said stock, and prayed that T. C. Phillips and Mrs. Nettie L. Wilson, together with her husband, C. W. Wilson, be made parties to the suit, and that the rightful ownership of said stock be determined. T. C. Phillips answered by way of cross-action against the bank, the Shear Company, and Mrs. Wilson alleging that on about May 23, 1920, C. W. Wilson executed and delivered to him a note for $5,000, and, to secure same, pledged said certificate No. 16 for 25 shares of stock in the Shear Company, and that afterwards, without fault or negligence on his part, he lost the note and certificate of stock; that same being found was returned to C. W. Wilson; and that Wilson thereafter fraudulently and wrongfully negotiated the stock to plaintiff, the Citizens' National Bank, and he (Phillips) sought judgment establishing the priority of his title and lien to said certificate of stock. Mrs. Wilson answered in the suit by way of cross-action, and asserted title to the 25 shares of stock heretofore mentioned, and also to an additional 25 shares, the whole of which she alleged had been issued in lieu of old certificate No. 112 for 50 shares of stock in the Rotan Grocery Company (the predecessor of the Shear Company), which 50 shares of stock in the Rotan Grocery Company she had previously acquired as her separate property, and sought to recover against the Shear Company said stock or its value, with 6 per cent. interest from October 1, 1916. After the filing of the answer of Mrs. Wilson, the Shear Company interpleaded Mrs. Grace J. Witherspoon, Andrew J. Witherspoon, and R. O. Silvers, alleging they claimed an interest in the stock in question. Pending the suit, Mrs. Wilson was divorced from her husband, C. W. Wilson, and he was dismissed from the suit. There were other pleadings and supplemental pleadings, the case finally resolving itself into two cases, or two main issues, one between T. C.

Phillips and the Citizens' National Bank as to their respective rights to certificate No. 16 for 25 shares of stock in the Shear Company; the other was between Mrs. Wilson and the Shear Company, as to whether or not Mrs. Wilson was entitled to recover of the Shear Company certificate No. 112 for 50 shares of the Rotan Grocery Company, purchased in 1913, and alleged to have been her separate property, or the value of said shares.

"The issues and the facts bearing upon same will appear more fully in the course of our opinion. The court instructed a verdict in favor of Mrs. Grace Witherspoon, R. O. Silvers, T. C. Phillips, and the Citizens' National Bank as against Mrs. Wilson, and submitted the case on special issues as between T. C. Phillips and the Citizens' National Bank, and also as between Mrs. Wilson and the Shear Company. In view of the disposition we have decided must be made of the case as between T. C. Phillips and the Citizens' National Bank, it is unnecessary to set out the findings of the jury as between said parties.

"To the issues submitted as between Mrs. Wilson and the Shear Company the jury made the following findings:

" '(9) The defendant Mrs. Nettie L. Wilson did, on or about February 3, 1913, or subsequently thereto, acquire as her separate property 50 shares of stock in the Rotan Grocery Company, evidenced by certificate No. 112 in said corporation.

" '(10) Said stock at the time of the alleged sale was owned by H. H. Shear.

" '(11) Did the Shear Company, at the date of the issuance to C. W. Wilson of certificates Nos. 13 to 16, inclusive, in the Shear Company, through its president, H. H. Shear, or its other officers, have knowledge or notice that the stock evidenced by certificate No. 112 in the Rotan Grocery Company was the separate property of the defendant Mrs. Nettie L. Wilson?' (Not answered.)

" '(12) At the time of the purchase of the stock evidenced by certificate No. 112, Mrs. Nettie L. Wilson did request Mr. H. H. Shear, as president, to enter said defendant Mrs. Nettie L. Wilson's name as holder and owner of said shares of the capital stock in said Rotan Grocery Company on the books of said company.

" '(13) The failure or refusal of said company to enter the name of Mrs. Nettie L. Wilson as a holder and owner of the 50 shares of capital stock on the books of said company was not a proximate cause for C. W. Wilson's disposing of same.

" '(14) Mrs. Nellie L. Wilson, defendant, at the time of the purchase of said stock evidenced by certificate No. 112, did request the said H. H. Shear, as president, to issue said certificate in her name.

" '(15) Such failure or refusal to issue said certificate in the name of Mrs. Nettie L. Wilson was not a proximate cause of the disposal of said stock by C. W. Wilson.

" '(16) The reasonable market value per share of the capital stock of the Rotan Grocery Company on February 3, 1913, was $300 per share.

" '(17) The reasonable market value per share of the capital stock of the Shear Company on October 1, 1916, was about $300.

·" '(18) The reasonable market value per share of the capital stock of the Shear Company on October 21, 1916, was about $300.

" 'Special issue No. 7, requested by the Shear Company: Did the Shear Company, at the time it issued certificates Nos. 13 to 16, inclusive, to C. W. Wilson, know, or did it have notice, that C. W. Wilson was not entitled to have certificate No. 112 of the Rotan Grocery Company canceled, and said new certificates of stock in the Shear Company issued in his name in lieu thereof?' (Not answered.)

" 'Special issue No. 9, requested by the Shear Company: Mrs. Nettie L. Wilson was negligent in the exercise of control and possession of certificate No. 112 of the Rotan Grocery Company, and also such negligence was the proximate cause of the issuance of new certificates in the Shear Company in lieu of certificate No. 112 of the Rotan Grocery Company to C. W. Wilson.'

"The court entered judgment in favor of the Citizens' National Bank and against T. C. Phillips and Mrs. Wilson, and also in favor of the Shear Company against Mrs. Wilson."

The Court of Civil Appeals dismissed the appeal of T. C. Phillips, reversed and remanded the cause as between Mrs. Nettie L. Wilson and the Shear Company, but as to all other parties the judgment of the trial court was affirmed. 284 S. W. 654.

Writs have been granted to both T. C. Phillips and the Shear Company, the latter having been granted "because of the various dissents shown in the several opinions of the Court of Civil Appeals."

We will first dispose of the case between the Shear Company and Mrs. Nettie L. Wilson. We agree with the conclusions reached by the Court of Civil Appeals through the concurring opinion of Chief Justice Gallagher and Justice Barcus. We, too, think that the controlling issues to be determined are whether the shares of stock in the Rotan Grocery Company evidenced by certificate No. 112 were the separate property of Mrs. Wilson, and whether the corporation had knowledge or notice of such fact at the time it accepted the surrender of said certificate No. 112 and issued new certificates in lieu thereof in its changed corporate name, to C. W. Wilson.

The verdict found the first of these issues in Mrs. Wilson's favor, and it is by no means clear it did not likewise find the other issue in her favor. It does find that at the time of the purchase of the stock Mrs. Wilson did request Shear as president to enter her name as holder and owner of the shares on the books of the company, and did, at the time, request Shear as president to issue said certificate in her name. Unless there is some forbidding reason, and we shall notice this question later, notice to the president of the company will be imputed to the company. But we cannot decide this matter, since the judgment of the Court of Civil Appeals against Mrs. Wilson as to a rendition upon the verdict is not before us upon any ap-

plication for a writ by her. The judgment in this respect, therefore, must stand.

A brief discussion of the general principles governing the rights of the parties will demonstrate the correctness of the view that, next to ownership, the issue of notice to the corporation is controlling. It is ·undisputed that the reissuance of certificate No. 112 in the reorganized company to C. W. Wilson resulted in a loss to Mrs. Wilson of the value of the shares, less, of course, the benefit she received from a portion of the proceeds being applied to her debt which, in any event, should be charged to her.

[1] Upon elementary principles, any act done or suffered by the corporation which invests a new party with the ownership of its shares, without the due presentation and surrender of its certificate, renders the corporation liable to the real owner of the shares, as for their conversion. Tafft v. Presidio & F. R. Co., 84 Cal. 131, 24 P. 436, 11 L. R. A. 125, 18 Am. St. Rep. 166, a decision by the Supreme Court of California, quotes with approval from a Massachusetts case the following:

"Appellant was under no obligation to permit a transfer until the requirements of its by-laws and of the laws of the state were fully complied with. 'A purchaser of stock does not receive the certificate of his vendor, but a new one, made out in his own name, and reciting nothing contained in the former. He is therefore protected in the enjoyment of his purchase, even though there was no right to make the transfer to him. For this reason an unauthorized transfer is a wrong done to the owner of stock, for which not only the person who makes it, but any one knowingly assisting in the wrong, is responsible. That a bank or other corporation, and also these defendants, are trustees to a certain extent for stockholders —that is, for the protection of individual interests—cannot be denied. They are alike trustees of the property and of the title of each owner. They have in their keeping the primary evidence of title, and they are justly held to proper diligence and care in its preservation. From this it results that they may rightfully demand evidence of authority to make a transfer before they permit it to be done. Their own safety requires that they be satisfied of the right of the person proposing to make a transfer to do what he proposes. Generally, sufficient evidence of such right is found in the possession of legal title to the stock. Yet it is well settled that it is not in all cases sufficient, notwithstanding that the true equitable ownership may be in some other than the holder of the legal right, and the transfer may be a gross wrong to such an equitable owner. To that wrong the corporation or keepers of the register make themselves parties, if, with knowledge that there is no equitable right to transfer, they permit it to be done.'"

That court cites Bayard v. Bank, 52 Pa. 232. Our own Supreme Court (Strange v. H. & T. C. R. R. Co., 53 Tex. 162) cites this same case and others for an abridged statement of this liability as follows:

"The company is to a certain extent the custodian of the rights of the stockholders, and is responsible for an illegal issuance of stock to their prejudice."

This in general is the rule throughout the country. First Nat. Bank of South Bend v. Lanier, 11 Wall. 369, 20 L. Ed. 172; Allmon v. Salem Bldg., etc., Ass'n, 275 Ill. 336, 114 N. E. 170; Hall v. Rose Hill, etc., Road Co., 70 Ill. 673; Cohen v. Gwynn, 4 Md. Ch. 357; Sewall v. Boston Water Power Co., 4 Allen (Mass.) 277, 81 Am. Dec. 701; Cushman v. Thayer Mfg. Jewelry Co., 76 N. Y. 365, 32 Am. Rep. 315; Holbrook v. N. J. Zinc Co., 57 N. Y. 616; Cleveland, etc., R. Co. v. Robbins, 35 Ohio St. 483; Gamble v. Dawson, 67 Wash. 72, 120 P. 1060, Ann. Cas. 1913D, 501.

The statutes provide:

"The stock of any corporation created under this title shall be deemed personal estate, and shall be transferable only on the books of the corporation in such manner as the by-laws may prescribe." Vernon's Sayles' Stat. art. 1168.

In pursuance of this article and the by-laws of the company, the corporation had printed in the face of all 'its certificates of stock, including certificate No. 112, the following:

"Transferable only on the books of the company in person or by attorney upon the surrender of this certificate properly indorsed."

[2] Now it cannot be doubted but that, in the absence of notice to the contrary, the corporation in the matter of transferring its. shares would be fully justified in acting upon the presentation of such certificate properly indorsed by the record holder of the legal title to the shares represented. Upon the plainest principles of justice, notice that another than the one presenting is the equitable owner of the shares would preclude the corporation from making the reissue upon the penalty of liability as for a conversion, upon the real owner's suffering a loss.

[3-5] Now it will be borne in mind that under the by-laws of the company, and as expressed in the face of the certificates themselves, such certificates were "transferable only on the books of the company in person or by attorney upon the surrender of this certificate properly indorsed." This means indorsed in such a way as to transfer the title to the shares. Now by an amendment to the Statutes (article 4621) of 1913 (now article 4614) it is provided:

"The wife shall have the sole management, control and disposition of her separate property, both real and personal; provided, however, * * * the joint signature of the husband and wife shall be necessary to a transfer of stocks and bonds belonging to her or of which she may be given control by this law."

If the corporation had notice, at the time its certificate No. 112 was surrendered to it;

and it reissued the shares in the name of C. W. Wilson, that such shares belonged to Mrs. Nettie L. Wilson, then it could only make such reissue upon the surrender of the certificate "properly indorsed." What "properly indorsed" means is fixed by statute in this case. It is not governed by the general principles of law applicable to commercial or other paper. The transfer of such stock owned by a married woman must be through "the joint signature of the husband and wife," and therefore necessarily implies that the transfer must be in writing. Such transfer, no doubt, could be made by indorsement on the certificate, even in blank, for the statute does not undertake to regulate, as in case of conveyances of land, the form of the transfer. It merely requires such transfer to be upon the joint signature of the husband and wife. Any transfer, therefore, otherwise good at law, would be sufficient. The certificate in the present case did not bear such joint signature, nor is there any contention of a transfer otherwise by Mrs. Wilson. The contention is that under the well-recognized rules facilitating the use of stock certificates as commercial paper, the corporation was authorized to treat C. W. Wilson, the holder under a blank indorsement of a prior legal owner, as the real owner. This, of course, is true in the absence of notice to the contrary, but presumptions, however wholesome, will not be indulged contrary to the known facts. There is no question of an innocent person's suffering or of estoppel. It is purely a question of the corporation's issuing Mrs. Wilson's stock to another, after notice that it belonged to her.

In Selover v. Commercial Co., 7 Cal. 266, it is held that—

"Where a feme sole becomes the owner of shares of stock in a company, and afterwards marries, and after marriage the husband and wife execute an indorsement on the certificate of stock, purporting to sell the same to A., without any privy examination of the wife, and there being at the time no inventory of the separate property of the wife on record, held, that such sale was void, as against a subsequent purchaser, under an instrument duly signed and acknowledged."

We will next consider the question of notice.

[6, 7] There is evidence requiring such issue to be submitted. It is earnestly insisted that the decisions of this section of the commission in Williams v. Terminal Hotel Co., 115 Tex. 278, 280 S. W. 505, and Moores v. Citizens' National Bank, 111 U. S. 156, 4 S. Ct. 345, 28 L. Ed. 385, which we expressly approved, is controlling in the present case against the knowledge of H. H. Shear, president of the corporation, being imputed to the corporation. But those cases are clearly not authority for this contention. The general theory upon which the knowledge of an officer or agent of another is imputed to that other is upon the presumption that such person will perform his duty to his principal by imparting any material information affecting his principal he may possess. But a well-grounded exception to this rule is that no such presumption will be indulged where it is to the personal profit, interest, or benefit of such agent or officer not to make such disclosure. In other words, the presumption of duty performed will not be indulged where the personal interest of the officer or agent is antagonistic in that respect to that of his principal. In the Moores and Williams Cases, supra, the imputation was not permitted because indisputably the interests of the principal and agent in each case were antagonistic. The law would not there presume that, notwithstanding his adverse interest, the agent performed his ordinary duty and imparted his knowledge to his principal. But here there is no sort of room for the contention that in the matter of surrender and reissue of the stock cetificate the interests of Shear, the president, and the corporation, were in any wise adverse or antagonistic. The corporation as such had no interest whatever in the sale by Shear of his stock to Mrs. Wilson, but the matter of its formal surrender and reissuance were matters in which the corporation was vitally interested, and H. H. Shear had no possible interest in such matter other than that there should be a proper and legal surrender of the old certificate and reissuance of the new. This was precisely the company's interest. At this point there was no adversity of interest. Their interests were in common. When Mrs. Wilson, by agreement with H. H. Shear, the individual, became the equitable owner of the stock, it thereupon became her privilege to have the certificate presented to the corporation for surrender, properly indorsed, and a new certificate in her own name issued. To do this it was necessary that the matter be handled by the duly authorized officer or officers of the corporation. It appears to be undisputed that H. H. Shear, the president, was such proper officer. The old certificate was actually in his hands—a duly authorized outstanding liability of the corporation. He was the proper officer of the corporation to receive such surrender and make such reissue. Not being disqualified by adverse interest, Mrs. Wilson was not required to present her certificate and request to any other person or official. The matter was handled in the usual and regular way. The law will not require such idle thing as to say:

"Mrs. Wilson, upon purchasing the certificate of stock from Mr. Shear, in whose possession the same was and in whom all title was vested, you should have required him physically to deliver such certificate, and you should thereafter have physically redelivered it to Mr. Shear, president of the corporation, for the purpose of surrender and reissue."

The law looks upon the substance and not the form of things. The substance of a perfect transaction has been shown, if not indeed the very form.

For these reasons we recommend that the judgment of the Court of Civil Appeals reversing and remanding the case as between the Shear Company and Mrs. Nettie L. Wilson be affirmed.

[8] As to the case between T. C. Phillips and the Citizens' National Bank, we think the judgment of the Court of Civil Appeals dismissing Phillips' appeal should be reversed.

Article 30, § 74, Vernon's Tex. Civ. Statutes, 1918 Supp., declares:

"The terms of the Seventy-Fourth judicial district shall be held as follows: Beginning on the second Mondays in February, April, June, August, October and December of each year, and may continue until the business thereof is disposed of."

As stated by the Court of Civil Appeals, this cause was tried in the court below at the April term, 1925, and final judgment rendered on May 30, 1925, and the motion of appellant Phillips for a new trial was overruled May 30, 1925. The April term, 1925, began on the second Monday in April, 1925, same being the 13th day of said month, and adjourned on Saturday, June 6, 1925, at which time said term expired by limitation of law; the appeal bond was filed June 29, 1925. An examination of the calendar for a series of consecutive years will disclose that under the statute the April term of the Seventy-Fourth district court may or may not continue in session more than eight weeks, according as the second Monday falls early or later in the month. It is thus apparent the April term of the Seventy-Fourth district court as such may at times continue in session more than eight weeks. It can make no difference that a particular term did not in fact continue in session more than eight weeks. The Legislature doubtless never had in mind that under the practical application of the statute some of the April terms might exceed eight weeks, while others could not. We do not think the Legislature meant to apply different rules of procedure to those terms. The statute guaranteeing as it does a valuable right, that of appeal, should be liberally construed, and if necessary the letter of the statute must yield to the manifest intention; "for the letter killeth but the spirit maketh alive."

Phillips being a nonresident of the county, and the term being one which might under the law continue more than eight weeks, his bond came in time.

We recommend that the case between T. C. Phillips and the Citizens' National Bank be remanded to the Court of Civil Appeals for disposition upon its merits.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed in part, and in part reversed and remanded to the Court of Civil Appeals for further consideration, as recommended by the Commission of Appeals.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.