**GILLETTE et al. v. HOUSTON NAT. BANK.**

No. 10946.

Court of Civil Appeals of Texas. Galveston.
April 11, 1940.

Rehearing Denied May 9, 1940.

Tamp W. Grobe, of Houston, for appellants.

Meyer C. Wagner and A. Milton Vance, both of Houston, for appellee.

CODY, Justice.

This is a suit for the conversion of a certificate of stock numbered 228,003, is-

sued to Alma Dick Gillette for one hundred shares of the capital stock of the Texas Corporation, brought by Mrs. Gillette, joined by her husband, against Houston National Bank. The value of the stock at all relevant times was $4,095.

Mrs. Gillette alleges that in July of 1934, she pledged the certificate, along with others, with Sterling & Baker, a partnership, in pledge to secure a note, payable to bearer, for $9,100. That in May, 1935, she gave Sterling & Baker, at their request, instruments reading:

"For Value Received,
 hereby sell, assign and transfer unto
 ............(......) shares of the ......
 Capital Stock of the ...................
 standing in .......... name on the books
 of said .......... represented by Certificate No. ...... herewith and do hereby irrevocably constitute and appoint ...... ...... attorney to transfer the said stock on the books of the within named company with full power of substitution in the premises.
 Dated ........
 Alma Dick Gillette
 Roy W. Gillette
"In presence of: J. D. Seymour."

She alleged that said instruments were to be used only if the note were not paid; that on the 14th of July, 1936, she paid $4,600, and gave her renewal note for $4,500, which was paid in full March 10, 1937; and since which time neither she nor her husband have owed Sterling & Baker anything. That without her knowledge or authority Sterling & Baker pledged said certificate numbered 228,003 to the bank as collateral to secure a debt owed by themselves to the bank (together with one of the blank instruments); that such indebtedness to the bank was secured by other collateral whose value greatly exceeded the debt due the bank. That the partnership, Sterling & Baker, and its members, were adjudged bankrupt on November 2, 1937, and thereafter, on November 4, 1937, the bank wrongfully and unlawfully sold said certificate, and wrongfully filled in or caused to be filled in the blanks in the aforesaid instrument in such a way as to make it appear that the sale had been authorized. That Mrs. Gillette and her husband did not learn of the unlawful conversion until November, 1937, and on November 20, 1937, demanded of the bank the return of the certificate, which the bank refused to return.

The bank answered with a general demurrer and a general denial, and further, that appellant having given the certificate to Sterling & Baker for the purpose of providing collateral, but having, by her execution of the assignment and power in blank, clothed Sterling & Baker with the indicia of ownership and with apparent power to transfer the certificate, she thus held out to all persons to whom said certificate and accompanying power might be presented by Sterling & Baker to whom she entrusted it, that such holder had title to said certificate and authority from her to transfer title thereto and sell or pledge same. The bank further alleged that the certificate and accompanying power, along with other certificates of stock, were delivered to it by Sterling & Baker on June 4, 1935, as collateral security for a bearer note of Sterling & Baker for $45,000. The bank pled reliance upon the assignment and power in blank which accompanied the certificate, and that it acquired same in due course of business, in good faith, and without notice of rights of appellant in the certificate, or of want of authority of Sterling & Baker to pledge it, took it as collateral, and surrendered in exchange for stocks then delivered it 269 shares of the Humble Company of the value of (about) $15,000, which it had theretofore held as collateral to the $45,000 note; and that it, the bank, thereafter made to Sterling & Baker further cash loans upon the faith of the collateral which it held, and that it would not have surrendered such Humble stock, nor made such further loans, but for its reliance upon said assignment and power in blank and its belief in the representations made by appellant thereby. That appellant should have anticipated, from the fact that the assignment and power was executed in blank, and not restricted to an assignment to provide collateral, that Sterling & Baker might make the use of it that they did, and appellee pleaded that appellant was estopped to deny that Sterling & Baker had authority to transfer title to said stock and to pledge the same to appellee. Appellee further pleaded a general custom at Houston, and in Texas, that title to corporation stock passed by delivery of the certificate with blank assignment and power accompanying same,

executed by the party whose name appeared on the face of the certificate, without each transferee of the certificate being required to have it transferred to his name on the books of the issuing corporation, and that such certificates of stock accompanied by such transfers and powers of attorney formed the basis of commercial transactions and were fully used as collateral by persons in said community, and that it was customary for banks, brokers and the public generally to accept certificates of corporate stock so endorsed without inquiry. That it was a further general custom that the blank assignment and power of attorney duly executed by the person whose name appeared on the face of the certificate of stock should be left blank until some person into whose possession the certificate might come should desire to have the stock transferred on the books of the corporation, in which event the holder was authorized to fill in the blanks of the assignment and power.

Appellant by supplemental petition pled coverture as a bar to appellee's plea of limitation.

Upon special issues the court rendered judgment for appellee, the bank. These were, omitting non-essential parts, as follows:

"Special Issue No. 1.

"Was the bank, on June 4, 1935, a bona fide pledgee of the 100 shares of stock represented by certificate 228003? You are instructed that a bona fide pledgee of stock is a pledgee who has, in good faith, received such stock as collateral without notice of adverse rights of another person and without notice of facts which would cause a person of ordinary prudence, in the exercise of ordinary care, to make inquiry as to the rights of such other person." The jury answered, "It was".

"Special Issue No. 2.

"Did the bank believe in good faith at the time it accepted certificate No. 228003, that Sterling & Baker had the right to pledge it to secure their indebtedness to the bank?" The jury answered, "It did".

"Special Issue No. 3.

"At the time the bank accepted said certificate as collateral to the $45,000.00 loan, did it surrender to Sterling & Baker in exchange therefor 269 shares of stock of the Humble Oil & Refining Company theretofore held as collateral to said loan?" The jury answered, "It did".

In answer to special issue No. 4, the jury found that the bank surrendered 269 shares of the Humble Company stock on June 4, 1935, in good faith, upon the assignment and power executed by appellant et vir., which accompanied certificate No. 228003. In answer to special issue No. 4—a, the jury found that the bank surrendered the 269 shares of the Humble Company on June 4, 1935, in reliance upon the assignment and power executed by appellant et vir., which accompanied certificate No. 228003. In answer to special issue No. 5, the jury found the bank would not have surrendered to Sterling & Baker said shares of the Humble Company and accepted in substitution the certificate No. 228003 but for its reliance upon the assignment and power attached thereto. In answer to special issue No. 6, it was found that the bank made additional loans to Sterling & Baker subsequent to the delivery to it of certificate No. 228003, in good faith upon the assignment and power which accompanied the certificate. That the bank's additional loans to Sterling & Baker subsequent to the delivery to it of the certificate were in reliance upon such assignment and power. That the bank would not have made additional loans to Sterling & Baker after it received the certificate in pledge but for such assignment and power. In answer to special issue No. 8, the jury found that appellant was not negligent in entrusting certificate No. 228003, with the assignment and power in blank, to the holder of the $9,100 note. To special issue No. 10, the jury found appellant was not negligent in failing to restrict the assignment and power which she executed so as to show by its terms that the holder had power to deal with the stock only for the indebtedness owed by her to the holder of the $9,100.

Appellant testified that early in 1933 she executed to Sterling & Baker a note for $9,100, and put up as collateral with Sterling & Baker 380 shares of Texas Company stock, and 41 shares of American Telegraph and Telephone Company stock; and that attached to each certificate delivered to them in connection with such note was one of the blank stock powers signed by herself and her husband. Appellant testified that the way she paid off the note was by selling 180 shares of such Texas Company stock. This sale of 180 shares she accomplished by giving Sterling & Baker an order in writing to sell such 180 shares, —she did not fill out the blanks in any of the powers she had given in connection

with such stocks. It was appellant's understanding that the stock power attached to each certificate pledged by her to Sterling & Baker was to be used in conjunction with the contract embodied in the note, and in the event she failed to pay off her note the power would be used to foreclose, that is, to enable Sterling & Baker to sell the stock if she did not pay the note. She knew that if she failed to live up to the obligations represented by her note, that the blanks would be filled in and the stock delivered to a purchaser. She trusted Sterling & Baker.

 Under the evidence just referred to, which is undisputed, Sterling & Baker were without actual authority to dispose of appellant's certificate of stock. In the leading case of McNeil v. Tenth National Bank, 46 N.Y. 325, 7 Am.Rep. 341 (cited with approval in Strange v. Houston & T. C. R. R. Co., 53 Tex. 162) it is said: "It must be conceded, that as a general rule, applicable to property other than negotiable securities, the vendor or pledgor can convey no greater right or title than he has. But this is a truism, predictable of a simple transfer from one party to another where no other element intervenes. It does not interfere with the well-established principle, that where the true owner holds out another, or allows him to appear, as the owner of, or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. * * * Simply intrusting the possession of a chattel to another as depositary, pledgee or other bailee, or even under a conditional executory contract of sale, is clearly insufficient to preclude the real owner from reclaiming his property, in case of an unauthorized disposition of it by the person so intrusted. * * * But if the owner intrusts to another, not merely the possession of the property, but also written evidence, over his own signature, of title thereto, and of an unconditional power of disposition over it, the case is vastly different. There can be no occasion for the delivery of such documents, unless it is intended that they shall be used, either at the pleasure of the depositary, or under contingencies to arise. If the conditions upon which this apparent right of control is to be exercised, are not expressed on the face of the instrument, but remain in confidence between the owner and the depositary, the case cannot be distinguished in principle, from that of an agent who receives secret instructions qualifying or restricting in apparently absolute power."

In Russell v. American Bell Telephone Co., 180 Mass. 467, 62 N.E. 751, the distinction is clearly pointed out by Chief Justice Holmes, as follows: "The qualification of the rule, as not applying when the instrument is stolen, is not based upon the name of agent's crime but upon the fact that in the ordinary and typical case of theft the owner *has not intrusted* the agent with the document and therefore is not considered to have done enough to be estopped as against a purchaser in good faith. He certainly has not done enough if the estoppel is based upon the principle that when one of two innocent persons is to suffer the sufferer should be the one whose confidence put into the hands of the wrongdoer the means of doing the wrong. But in a case like the present the agent has been intrusted with the converted property * * *. The ground of estoppel is present and the estoppel arises. *The distinction is not new. On the one side are cases * * * where an agent or servant simply had access to a document remaining in the possession of the owner; on the other, cases * * * where possession is intrusted to the agent for one purpose and he uses it for another."* (Italics ours.)

The distinction just referred to is recognized in Phillips v. Citizens' National Bank, Tex.Com.App., 15 S.W.2d 550, 552, where the facts were that Phillips lost a stock certificate endorsed in blank and it was returned by the finder to Wilson, who thereafter pledged it to secure another loan. In deciding the case the Commission of Appeals said: "In view of the fact that certificates of stock, when indorsed in blank, are transferable by mere delivery, they are frequently referred to as quasi negotiable. But in such cases the transfer of the title is really upon the principle of estoppel. 14 C.J. p. 665. Thus where an owner of such certificate *trusts* it to another for a particular use and that other exceeds his actual authority and transfers the certificate to an innocent purchaser for value, the latter may successfully hold the same as against the real owner through estoppel." (Italics ours.) But in the case just quoted from the court said: "Here the estoppel relied upon is the negligence of Phillips in losing the certificate". Phillips had not entrusted his

property and indicia of title to anyone, but had lost it. The Phillips case does not hold that an innocent purchaser in such case is entitled to prevail only if the owner was negligent. But, as pointed out by appellee here, what it does say is that, even in the instance where the owner losing the certificate and power is not estopped by the rule which bars the right of the owner *trusting* those documents to another, he may yet be estopped if he is guilty of negligence which is a proximate cause of the subsequent acquisition by another.

The fact then that appellant was not negligent, as found by the jury, in entrusting the certificate with the accompanying blank stock power to Sterling & Baker, does not prevent appellee from invoking the principle of estoppel that when one of two innocent persons must suffer the sufferer should be the one whose confidence put into the hands of the wrongdoer the means of doing the wrong. It cannot be denied that appellant so entrusted Sterling & Baker with the apparent power to pledge the certificate as to induce the bank in good faith to accept such certificate. The understanding that appellant had to the effect that Sterling & Baker should make use of the blank stock power only to sell such certificate to pay off the note was in the nature of a secret limitation on such stock power. The case of State Trust & Savings Bank v. Mayes, Tex.Civ.App., 67 S.W. 2d 419, 420 (which was affirmed without written opinion on original hearing) does not hold contrary to our conclusion, just expressed. The facts in that case are very similar to those in this. But in that case the main ground of defense relied upon and pled was that the owner of the stock "failed to use ordinary care when she executed the said assignment and endorsement in blank and delivered the stock certificates to the Kramer Securities Company, same being assignment and endorsement for a specific purpose. That she should have foreseen that the Kramer Securities Company might transfer, assign or pledge her stock certificates if she did not in some way attach the same to the note and pledge agreement which she signed; that she should have foreseen that by executing the assignment and endorsement in blank and delivering the same to the Kramer Securities Company without attaching said certificates to the note and pledge agreement, that same might or would fall into the hands of an innocent

purchaser for value. That she is now estopped by her failure to use ordinary and due care and diligence * * * in asserting as against the defendant who is holding same as security for its loan to the Kramer Securities Company." The Court recognized that the owner of stock who endorses stock certificates in blank and places them in the possession of another party as collateral security for a loan *may* be guilty of such negligence in the handling of the stock as would estop him from enforcing ownership against an innocent third party. And the court stated that it was this rule of law that was invoked in that case as a defense. "The issue is thus narrowed to the inquiry as to whether defendant in error, in the light of attending circumstances, ought to have anticipated the wrongful act committed by the securities company. This is a question of fact to be determined by the court or jury trying the case. * * * The court necessarily found, in the instant case, that defendant in error was not guilty of the negligence alleged, and, as this finding is on a question of fact * * * it is * * * binding upon this court." The question was not before the court in that case, however, whether, if the defense had invoked the rule of law that when one of two innocent persons must suffer the sufferer should be the one whose confidence put into the hands of the wrongdoer the means of doing the wrong. Of course every one knows that the confidence he places in another may be abused, and when it is abused this abuse is generally due to the perfidy of the one trusted rather than to the negligence of the one who reposed the confidence. And the principle of estoppel whereby when one of two innocent persons must suffer the sufferer should be the one whose confidence put into the hands of the wrongdoer the means of doing the wrong, would be nullified if the one in whom the confidence was reposed was so notoriously untrustworthy that only the negligent and improvident trust him. Indeed, every one has the right to believe that another will not commit a felony, such as committed in connection with pledging the certificate. We therefore overrule appellant's assignment that the court should have granted her motion for a judgment notwithstanding the verdict, or based upon the finding that she was not negligent.

In the early case of Strange v. Houston & T. C. Ry. Co., 53 Tex. 162, in holding

that the plaintiff took good title, the court said:

"Browder, the original shareholder, testified that he placed his certificate of stock, with a blank transfer executed by him thereon, in the hands of Fletcher, for the purpose of effecting a sale.

"Having thus given to Fletcher possession of the original certificate with the external indicia of ownership and the right of disposal, Fletcher's subsequent sale of it, under which plaintiff Strange claims, clothed him with the apparent legal title.

"The rights of Strange, if bona fide, do not depend upon the actual title or authority of Fletcher to sell, but upon the act of Browder giving the apparent authority, and which would estop him and his assignee. Saltus v. Everett, 20 Wend. [N.Y. 267] 278 [32 Am.Dec. 541]; McNeil v. National Bank, 46 N.Y. 325 [7 Am. Rep. 341]; * * * Mount Holly L. & M. Turnpike Co. v. Ferree, [17 N.J.Eq. 117] 2 C.E.Green 117; Holbrook v. Zinc Co., 57 N.Y. [616] 617."

■ Now if the rights of the bank to the certificate pledged to it were acquired bona fide we do not see, under the facts of this case, why it did not have the right to sell the certificate and apply the proceeds to the payment of the note which it secured. Appellee had no notice of appellant's claim to the certificate at the time of the foreclosure sale in November. It is true that appellee held collateral of the value of some $20,000 in excess of its secured debt. But this did not impair its right, certainly in the absence of notice of appellant's rights, to sell out such collateral as it considered proper to pay off its debt, and hold the balance for Sterling & Baker, or their creditors. In Johnson v. Bixby, 8 Cir., 252 F. 103, 104, 1 A.L.R. 660, it is said: " * * * since the certificates were signed in blank and taken innocently by Finley, Barrel & Co., such pledge was binding. * * * A considerable amount of stock, including all of that here involved, had been pledged for the sole purpose of collaterally securing this indebtedness. The pledgee could sell any or all of it for that purpose. But, if it elected to dispose of the collateral gradually by piecemeal, then it must stop when the proceeds thereof were unquestionably enough to satisfy all possible claim."

In Meyer's The Law of Stock Brokers and Stock Exchanges, the author says: "The broker's pledgee has the right to en-

force his claim against the broker by the sale of the pledged securities, and if he does so in the manner required by law or by his agreement with the broker he does not incur any liability to the true owner of the pledged stock." Vol. I, Sec. 75(c). See also In re J. C. Wilson & Co., D.C., 252 F. 631; 33 Tex.Jur. 715; Labor Bank & Trust Co. v. Dow, Tex.Civ.App., 26 S. W.2d 925, 928; 38 C.J. 1369.

In Le Marchant v. Moore, 150 N.Y. 209, 44 N.E. 770, 773, it is said: "The defendants, as pledgees, were entitled to regard Evans & Company [the brokers] as owners until they were notified of the plaintiffs' [customers'] rights."

In Harper v. First State Bank of Grand Prairie, Tex.Civ.App., 3 S.W.2d 552, 554, the court said: "A bona fide holder of negotiable paper pledged as collateral to an indebtedness is not required to proceed first against other collaterals also pledged to secure such indebtedness because of equities alleged to exist between the original parties to such pledged paper."

■ We are dealing here with an instance of where the plaintiff brings a suit for conversion after the foreclosure sale; indeed, notice was brought home to the pledgee of a plaintiff's rights to stock only after such stock had been sold. And in speaking of the right of the maker of a note pledged by the payee to a third party as collateral for a debt to require such third party to resort to other securities because of the existence of defenses as between the maker and payee, it is stated in Sowell v. Federal Reserve Bank, 5 Cir., 294 F. 798, 799, 801, that the doctrine of marshalling, "does not require a bona fide holder of negotiable paper, pledged as collateral to an indebtedness, to proceed first against other collateral, because of equities alleged to exist between the original parties to the pledged paper. * * * The rights of the obligors, on the other collateral, could be determined only in a proceeding to which they were all made parties."

Appellant is relying on the holding in Live Stock State Bank v. Locke, Tex.Civ. App., 277 S.W. 405, 406, where it is said: "The presumption is to be indulged in favor of Locke that the other notes held by plaintiff bank as collateral security were valid and collectible, and the burden rested upon the plaintiff [bank] to overcome the presumption." But that principle cannot apply here. The facts in the Locke case

were that Locke gave his note to the Bank of Miami for (about) $1,700. This bank was indebted to Live Stock State Bank (of Kansas City Missouri) in excess of $30,-000, on September 3, 1923, and on that date it pledged Locke's note, together with the notes of about thirty others, to the Live Stock State Bank, as collateral to its indebtedness. On November 2, 1923, the Live Stock State Bank failed, and the liquidating agent for the State of Missouri took over its affairs, and thereafter brought suit against Locke on his note *and to foreclose its claim.* The Bank of Miami failed February 21, 1924, and at that time was indebted to the Missouri bank in the sum of $30,000. The Miami Bank held on deposit, at the time it failed, about $8,000 belonging to Locke. It was held, and we believe correctly, that the liquidating agent must first resort to the other collateral under the facts of that case. It is clear, however, that the Locke case is not in conflict with the Harper case, supra. In the Harper case, as in the case at bar, the suit was for *damages for conversion* of plaintiff's property, and *was brought after the foreclosure.* The bank had the contract right to appropriate the collateral security to the payment of its debt. And while it is not necessary to decide in the present case whether, had appellant resorted to a court of equity to require the bank to first exhaust its other collateral, she could have compelled this to be done, yet it is clear that, after the bank has foreclosed its lien on its collateral security, and the suit is one for damages for conversion, damages cannot be recovered, for the bank had the legal right to appropriate its collateral security to the payment of its debt. And should it be conceded that, prior to the foreclosure, it could have been required by equity first to exhaust other collateral, this does not apply after the foreclosure of the lien, the exercise of a legal right under a lawful contract of security.

■■ Though appellant is suing appellee for damages resulting to her from the conversion of her certificate, her contention seems to be that by reason of the requirements of Art. 4614, R.S.1925, as amended in 1929, Vernon's Ann.Civ.St. Art. 4614, title to her certificate could not be transferred out of her by means of the blank stock power signed by her and her husband. The article reads in part: "* * the wife shall have the sole management,

control, and disposition of her separate property, both real and personal; provided however * * * the joint signature of the husband and wife shall be necessary to a transfer of stocks and bonds belonging to her or of which she may be given control by this law." It was held by the Commission of Appeals in Shear Co. v. Wilson, 292 S.W. 531, 535, "The transfer of such stock owned by a married woman must be through 'the joint signature of the husband and wife,' and therefore necessarily implies that the transfer must be in writing. Such transfer, no doubt, could be made by indorsement on the certificate, even in blank, for the statute does not undertake to regulate, as in case of conveyances of land, the form of the transfer. It merely requires such transfer to be upon the joint signature of the husband and wife. Any transfer, therefore, otherwise good at law, would be sufficient." As the blank power, executed as appears above, is shown, by custom, to be sufficient to transfer stock generally, we see no reason why, when the requirement of the law has been fulfilled by having the joint signature of the husband and wife, it is not entirely adequate. But if appellant's objection should be held to be valid, it would be fatal to any recovery of damages by her for conversion against appellee. For it is essential to a recovery for conversion that the title to the thing converted pass to the one who converts it. And if the title failed to pass out of appellant her action should have been brought against the corporation in which she owns the shares of stock, which was the remedy which Mrs. Wilson pursued and received. Shear Co. v. Wilson, Tex.Com.App.; 292 S.W. 531.

■ Appellant contends that the custom of passing title to stock by delivery when accompanied by such a blank power as, set out above which was relied upon by the bank was unlawful because only the last transferree was to pay the tax under such custom. While we do not believe appellant has shown any violation of the revenue law by the custom referred to, we believe that the finding by the jury of the bank's good faith acquisition of the certificate makes any inadvertent violation of the revenue laws (if there had been any) insufficient to destroy appellee's rights, acquired in good faith. And for that reason we do not discuss this contention at length. Furthermore, if the seller violated the law, we do not see how that could destroy the

purchaser's rights. See State National Bank v. Potter, Tex.Civ.App., 231 S.W. 828; Burson v. Huntington, 21 Mich. 415, 4 Am.Rep. 497.

After laborious consideration, we are unable to say that any reversible error is presented. Judgment of the court below should be affirmed, and it is so ordered.

Affirmed.

On Appellants' Motion for Rehearing.

In the very recent case of Sackenreuther v. Winston et al., Tex.Civ.App., 137 S.W. 2d 93, 97, writ of error refused, the facts are in many respects similar to the facts in this case. There, as here, appellant contended that, since his certificates of stock were non-negotiable, the title thereto could have passed into appellees only by estoppel by reason of his negligence, and that, the jury having found that he was not guilty of negligence in delivering and assigning such stock to Sterling & Baker, the court erred in rendering judgment in favor of appellees. But this court, speaking through Chief Justice Monteith, applied the principle "that where one of two persons, equally entitled to consideration, as far as their purposes are concerned, must suffer from the delinquency of a third, the loss more properly falls upon him, who, having readily at hand the means of protection, has failed to avail himself of them." This principle is equally applicable to the facts of this case. We must overrule appellants' motion for rehearing.

Motion refused.